*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID SIMMONS, | ) | |
| | ) | Supreme Court No. S-16171 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-14-01187 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | No. 7299 – September 14, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: David Simmons, pro se, Palmer, Appellant. Matthias Cicotte, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney Justices. [Winfree, Justice, not participating.]

STOWERS, Chief Justice.

## I. INTRODUCTION

An inmate refused to provide a DNA sample for Alaska's DNA identification registration system pursuant to a statutory requirement that persons convicted of certain crimes provide a DNA sample for the system. Refusal to submit a

sample constitutes a felony. The inmate was charged with an infraction in a prison disciplinary hearing for refusing to provide the sample and found guilty. He appealed to the superior court, which affirmed. He now appeals to this court, raising several claims of error. His core argument is that the crimes for which he was found guilty and incarcerated occurred before the effective date of the DNA identification registration system. He argues that the DNA sample requirement either is not retrospective or, if it is, it violates the ex post facto clauses of the Alaska and U.S. Constitutions.

Another issue on appeal concerns an inmate's right to counsel in disciplinary proceedings. Because the inmate was charged with a disciplinary infraction constituting a felony, under our case law he had the right to counsel in his disciplinary hearing. The Department of Corrections refused to provide him counsel for his hearing. The superior court ruled that although the denial of counsel violated the inmate's constitutional rights, the violation did not prejudice his ability to have a fair hearing.

We affirm the superior court's decisions.

## II.     FACTS AND PROCEEDINGS

David Simmons was indicted on counts of burglary in the first degree, assault in the second degree, assault in the third degree, and misconduct involving a deadly weapon in November 1990. He was found guilty by a jury on all four counts in May 1992. The court of appeals reversed Simmons's convictions in March 1995.[1] Simmons was retried and found guilty by a jury in September 1995. He was sentenced in June 1996.

Simmons was scheduled to be released on mandatory parole beginning in February 2014. On January 8, 2014, a parole officer asked Simmons to provide a DNA

---

[1]     *Simmons v. State*, No. A-4475, 1995 WL 17220358 (Alaska App. Mar. 22, 1995).

sample as a condition of his parole. Simmons refused. The officer concluded that Simmon's refusal to provide a sample violated AS 11.56.760, which makes it a class C felony for persons convicted of certain crimes to refuse to provide a DNA sample to an officer upon request, and thus also violated 22 Alaska Administrative Code 05.400(c)(24) (2018), which makes it a prison disciplinary infraction to commit a class C or B felony. The officer filed an incident report citing Simmons for this infraction.

A disciplinary hearing was held on January 14. Prior to the hearing Simmons invoked his right to counsel in writing. We have held that inmates who are charged with major disciplinary infractions for conduct that constitutes a felony have a constitutional right to counsel in prison disciplinary hearings;[2] nevertheless, the Department of Corrections did not provide Simmons counsel for the hearing. Simmons was found guilty and sentenced to 20 days of punitive segregation, with a suspended imposition of sentence if he committed no further violations for 180 days.

Simmons appealed the decision to the correctional facility superintendent; the superintendent denied Simmons's appeal. Simmons then appealed the superintendent's decision to the superior court. The superior court interpreted Simmons's appeal to include ex post facto, jurisdictional, double jeopardy, due process, right to counsel, separation of powers, statute of limitations, and doctrine of abatement claims. The Department did not file a brief responding to this appeal. Notwithstanding, the superior court ruled against Simmons on all claims except his claim that the Department violated his constitutional right to counsel. The court concluded that the Department unconstitutionally denied Simmons's right to counsel, but found that this violation was harmless error because there were no factual disputes and none of Simmons's legal claims had merit. The court affirmed the Department's disciplinary

---

[2]     *McGinnis v. Stevens*, 543 P.2d 1221, 1231-35 (Alaska 1975).

decision.  Simmons appeals.

## III. STANDARD OF REVIEW

"Appellate judicial review of prisoner disciplinary proceedings is available when 'issues of constitutional magnitude' are involved."[3]  We review issues concering constitutional rights of inmates de novo.[4]  "Because the superior court 'act[ed] as an intermediate appellate court in an administrative matter,' we 'independently review the merits of the administrative decision.' "[5]

## IV. DISCUSSION

### A. The DNA Sample Requirement Applies to Simmons.

Simmons was found guilty of four felonies in September 1995.  The requirement that certain convicted persons provide a DNA sample for the DNA identification registration system first went into effect on January 1, 1996.[6]  Simmons argues that the DNA sample requirement does not apply to him.  We disagree.[7]

---

[3]  *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011) (quoting *Dep't of Corr. v. Kraus*, 759 P.2d 539, 540 (Alaska 1988)), *overruled on other grounds by Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018).

[4]  *See id.* (quoting *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003)).

[5]  *Id.* (alteration in original) (quoting *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009)).

[6]  Ch. 10, § 4, SLA 1995.

[7]  The Department argues that Simmons did not sufficiently raise this argument in the administrative proceedings or in the superior court and therefore waived the argument.  We recently explained in *Walker v. State, Department of Corrections* that a pro se inmate does not forfeit a constitutional claim by failing to raise it in an administrative appeal, at least as long as the inmate brings the claim to the Department's attention during the initial stages of the disciplinary process.  421 P.3d at 81.  An incident

(continued...)

In 1995 the legislature passed AS 44.41.035, creating the DNA identification registration system.[8] This 1995 act provided for collection of DNA samples from "person[s] convicted of a crime against a person."[9] The act "applie[d] to all convictions occurring on or after [January 1, 1996]."[10] The act defined "crime against a person" as "a felony offense, or a felony attempt to commit an offense, under AS 11.41, other than AS 11.41.320, or under AS 11.46.400."[11] Simmons was convicted under AS 11.46.300(a)(1) (felony first-degree burglary), AS 11.41.210(a)(1) (felony second-degree assault), AS 11.41.220(a)(1) (felony third-degree assault), and AS 11.61.200(a)(1) (felony third-degree misconduct involving weapons). Two of these crimes — those defined in AS 11.41.210(a)(1) and AS 11.41.220(a)(1) — qualified as crimes against a person. But because Simmons was convicted before January 1, 1996, he was not required to provide a DNA sample as of January 1, 1996 under the provisions of the

---

[7]    (...continued)
report shows Simmons objected to retrospective application of the DNA sample requirement when he was asked to provide a DNA sample. At his disciplinary hearing and in his administrative appeal of the disciplinary decision, he also argued that the DNA sample requirement was enacted after his conviction. And Simmons argued that "[t]he DNA statute remains prospective to this day" in his appeal to the superior court. We conclude that Simmons has not forfeited his argument that the DNA sample requirement does not apply to him.

[8]    Ch. 10, § 2, SLA 1995.

[9]    *Id.* The act also provided for the collection of DNA for minors older than 16 who were adjudicated as delinquent for crimes that would be crimes against a person if committed by an adult. *Id.*

[10]    *Id.* §§ 3-4.

[11]    *Id.* § 2.

1995 act.[12]

In 2003 the legislature expanded the list of crimes that would require the submission of a DNA sample.[13] It required all persons convicted of felonies under AS 11 or AS 28.35 to submit a DNA sample in addition to those convicted of crimes against a person,[14] and it redefined "crime against a person" as "an offense, or an attempt or solicitation to commit an offense, under AS 11.41."[15] The changes in the 2003 act applied to all convictions after July 1, 2003 and all convictions that "occurred before [July 1, 2003] if the person [was] incarcerated or [was] under supervised probation or parole for the offense on or after [July 1, 2003]."[16] Since all four of Simmons's convictions are felonies under AS 11 — two of the four are also for offenses under AS 11.41 — and since Simmons was incarcerated on and after July 1, 2003, he was

---

[12] The Department argues that the date of Simmons's sentencing, in June 1996, and not the date he was found guilty, in September 1995, should constitute the date of conviction. We do not have to reach this question because we conclude that Simmons was required under the 2003 version of the statute that remained in effect in 2014 to provide a DNA sample, even assuming the date of the guilty verdict constituted the date of conviction. In this opinion, we assume that Simmons was convicted before January 1, 1996.

[13] Ch. 88, § 5, SLA 2003. AS 44.41.035 was previously amended in 2001 to require people "convicted of burglary or a felony attempt to commit burglary" to submit a DNA sample. Ch. 49, § 1, SLA 2001. This change only applied to persons convicted after September 23, 2001, *id.* § 2, and therefore is not relevant to the analysis whether Simmons is required to submit a DNA sample.

[14] Ch. 88, § 5, SLA 2003.

[15] *Id.* § 8.

[16] *Id.* §§ 12, 16.

required to provide a DNA sample under the 2003 act.[17]

### B. The DNA Sample Requirement Is Not An Ex Post Facto Law.

As explained above, the DNA sample requirement did not exist when Simmons committed the four felonies for which he was found guilty in 1995. Simmons argues that the addition of the DNA sample requirement retroactively enhanced the punishment for these already-committed crimes in violation of the ex post facto clauses of the U.S. and Alaska Constitutions. Courts that have considered this issue have consistently concluded that DNA sample requirements are not ex post facto laws.[18] We agree with these courts.

Article I, section 15 of the Alaska Constitution provides that "[n]o . . . ex post facto law shall be passed." An ex post facto law is

> [a]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed.[19]

---

[17]     Simmons also alleges that he had previously refused to provide a DNA sample in February 1996 and that the Department is precluded from disciplining him now. But Simmons was not disciplined for this earlier refusal: he was disciplined for the separate refusal to provide a DNA sample in January 2014.

Simmons further argues that this is a parole violation issue and that only the parole board had jurisdiction. He is incorrect as to the procedural posture of this case. Although he refused to provide a DNA sample to a parole officer, he was charged in a prison disciplinary proceeding.

[18]     *See State v. Banks*, 146 A.3d 1, 5-8 n.7, 13-15 (Conn. 2016) (citing cases from many jurisdictions).

[19]     *State v. Anthony*, 816 P.2d 1377, 1378 & n.1 (Alaska 1991) (quoting
(continued...)

However, "[t]he mere fact that [a law] alters a convicted felon's circumstances to his or her disadvantage does not in itself invalidate the statute as ex post facto."[20] And if a statute has a valid regulatory purpose, it does not violate the ex post facto clause.[21]

The ex post facto clause addresses laws that are penal in nature.[22] We have previously applied the two-part "intent-effects" test to determine whether a statute imposes punishment and violates the ex post facto clause of the Alaska Constitution.[23]

> Under this test, a court first determines whether the legislature intended to impose punishment; if punishment was the intent, the court's inquiry ends. But if the court concludes that the legislature intended a non-punitive regulatory scheme, the court next analyzes the effects of the statute under a number of factors to determine whether the statute is nonetheless punitive in effect.[24]

There are seven factors which provide guidance in assessing the statute's punitive effect:

> (1) "[w]hether the sanction involves an affirmative disability or restraint";
>
> (2) "whether it has historically been regarded as a punishment";
>
> (3) "whether it comes into play only on a finding of

---

[19] (...continued)
*Dobbert v. Florida*, 432 U.S. 282, 292 (1977)); *see also Doe v. State*, 189 P.3d 999, 1004-06 (Alaska 2008).

[20] *Anthony*, 816 P.2d at 1378.

[21] *Id*. (citing *De Veau v. Braisted*, 363 U.S. 144, 160 (1960)).

[22] *Doe*, 189 P.3d at 1003.

[23] *Id*. at 1003, 1007-19.

[24] *Id*. at 1007 (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

scienter";

(4)    "whether its operation will promote the traditional aims of punishment — retribution and deterrence";

(5)    "whether the behavior to which it applies is already a crime";

(6)    "whether an alternative purpose to which it may rationally be connected is assignable for it"; and

(7)    "whether it appears excessive in relation to the alternative purpose assigned."[25]

The text of AS 44.41.035 states, "*To support criminal justice services in this state*, the Department of Public Safety shall establish a deoxyribonucleic acid (DNA) identification registration system."[26]  In 2003 the legislature added the findings that the DNA registration system "is an important tool in the investigation of crime, both in excluding innocent persons and in detecting repeat offenders" and that it "will greatly assist law enforcement agencies in solving crimes and detecting repeat offenders."[27]  The DNA sample requirement appears in the state government title of the Alaska Statutes, not the criminal law title.  And a review of the House minutes when the DNA registry was created indicates the goal of the legislature was to create a registry to comport with national standards, to address high recidivism rates associated with the crimes identified in AS 44.41.035, and to assist in identifying potential suspects.[28]  From all this we conclude that in creating the DNA registry, the legislature's intent was not penal.

---

[25]    *Id*. at 1008 (alteration in original) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

[26]    AS 44.41.035(a) (emphasis added).

[27]    Ch. 88, § 1, SLA 2003.

[28]    *See* Minutes, H. Judiciary Comm. Hearing on H.B. 27, 19th Leg., 1st Sess. (Jan. 25, 1995).

We next consider the effects of the DNA sample requirement, considering each of the seven factors listed above.

### 1.	Affirmative disability or restraint

Alaska Statute 44.41.035 requires no physical restraint or affirmative disability. In *Doe v. State*, we found that the Alaska Sex Offender Registration Act (ASORA) was very restrictive because of the wide public dissemination of otherwise private information and potential ostracism from personal and professional relationships that the sex offender registry could cause.[29] The same is not true of the DNA registry. The DNA registry is explicitly *excluded* from the public record and is used in limited circumstances.[30] There is no significant physical restraint or disability entailed in collecting the DNA sample: the sample can be taken using a simple mouth swab. This factor weighs against finding punitive effects.

### 2.	Historically regarded as punishment

DNA collection is a relatively new phenomenon in the criminal justice system and has few historical antecedents.[31] We agree with the Department that DNA collection is akin to fingerprinting and that fingerprinting is traditionally a means of identification rather than punishment. The same is true in using an oral swab to collect and analyze DNA; the purpose is to generate a record of the person's identity.

Unlike ASORA, where the public dissemination of information about the

---

[29]	189 P.3d at 1008-12.

[30]	AS 44.41.035(f).

[31]	*See* Minutes, H. Judiciary Comm. Hearing on H.B. 27, 19th Leg., 1st Sess. (Jan. 25, 1995) (noting that Alaska would be the 27th state to start a DNA registry).

sex offender "resemble[d] the punishment of shaming"[32] and the registration and disclosure provisions were "comparable to conditions of supervised release or parole,"[33] the DNA registry is not public and has no on-going registration requirement. To the contrary, public disclosure is forbidden,[34] and a DNA sample must only be provided upon request.[35] This factor weighs against finding a punitive effect.

### 3. Finding of scienter

In *Doe* we observed that ASORA "overwhelmingly applies to offenses that require a finding of scienter for conviction" and that the few strict liability offenses to which ASORA applies, such as statutory rape, were such that "the law deems sufficiently harmful to effectively assume scienter."[36] Without further explanation, we concluded that this factor weakly implied a punitive effect and gave this factor little weight.[37] There is a stronger argument that the DNA sample requirement is non-punitive because the requirement applies to more offenses that do not require a finding of scienter, including most motor vehicle felonies under AS 28.35. Thus, even assuming that this factor still weakly implies a punitive effect, we give it little weight.

### 4. Traditional aims of punishment: retribution and deterrence

Requiring persons convicted of certain crimes to submit DNA samples does

---

[32] *Doe*, 189 P.3d at 1012 (citing *E.B. v. Verniero*, 119 F.3d 1077, 1115-19 (3d Cir. 1997) (Becker, J., concurring in part and dissenting in part)).

[33] *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., dissenting)).

[34] *See* AS 44.41.035(f).

[35] *See* AS 11.56.760(a)(2); AS 33.16.150(a)(12).

[36] *Doe*, 189 P.3d at 1012-13.

[37] *Id.* at 1013.

not have retributive or deterrent effects. We found ASORA applied to "a broad spectrum of crimes regardless of their inherent or comparative seriousness," and we concluded its "registration and unlimited public dissemination requirements provide[d] a deterrent and retributive effect."[38] Unlike ASORA, the requirement to submit samples to the DNA registry is limited to certain felonies, violent crimes against a person, and motor vehicle offenses.[39] The purpose for requiring a convicted person to provide a DNA sample is to create a DNA database for offenders of crimes with a high recidivism rate. And again, the information is not publicly disseminated.[40] It is difficult to conclude the act has a retributive effect.

It could be argued that there is a deterrent effect because law enforcement will have personal identifying information in its database. However, the same is true for providing fingerprints upon arrest. In this case, DNA was not requested until after Simmons was convicted. Given that the information in the database is not publicly disseminated, the deterrent effects that were present with ASORA are not present under the DNA registry. This factor weighs against finding a punitive effect.

### 5. Application only to criminal behavior

In *Doe* we explained that where a statute applies only to behavior that is already a crime, this supports a conclusion that the statute's effects are punitive.[41] In this case, the statute applies only to criminal behavior, so this weighs in favor of finding a punitive effect.

---

[38] *Id*. at 1013-14.

[39] *See* AS 44.41.035(b).

[40] *See* AS 44.41.035(f).

[41] *Doe*, 189 P.2d at 1014 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963)).

### 6. Advancing a non-punitive interest

In *Doe* we explained that this factor inquires into whether there is a legitimate, regulatory purpose for the law.[42] As expressly set forth in AS 44.41.035, the legislature's stated purpose was "[t]o support criminal justice services in this state."[43] And in 2003 the legislature found that the DNA registration system was "an important tool in the investigation of crime, both in excluding innocent persons and in detecting repeat offenders . . . [and] [would] greatly assist law enforcement agencies in solving crimes and detecting repeat offenders."[44] Based on these statements, the purpose of the DNA registry is to address crimes with a high recidivism rate and maintain a database that aids in protecting the public safety. Similar reasons were given for ASORA and we concluded that ASORA advanced a non-punitive interest.[45] This factor weighs against finding a punitive effect.

### 7. Closeness of means to State's interest

The final question is whether the statute's regulatory means are excessive in relation to their purpose. The "means . . . include the scope of the statute and the obligations it imposes on those subject to it and what the state can or must do in enforcing it."[46] In *Doe* we concluded that (1) ASORA was overbroad because there was no escape from its requirements even if an individual could show he was successfully rehabilitated; (2) ASORA was underinclusive because individuals who had committed

---

[42]    *Id*. at 1015.

[43]    AS 44.41.035(a).

[44]    Ch. 88, § 1, SLA 2003.

[45]    *Doe*, 189 P.3d at 1015-16.

[46]    *Id*. at 1017.

the same crimes but pleaded guilty to or were convicted of lesser offenses were not subject to the same disclosure requirements; (3) ASORA's requirements were excessive in relation to its non-punitive purpose because the registration requirements were "demanding and intrusive and [were] of long duration," and (4) the State's dissemination of the sex offender's private information was sweeping.[47] The same concerns are not present here. While there is no escape from the requirement to submit to DNA testing, AS 44.41.035 does not substantially burden individuals like ASORA does. And unlike ASORA, a person required to provide a DNA sample does not have to register and re-register or update private information that is then distributed to the public. The registration requirements of AS 44.41.035 are not demanding or intrusive, and the information in the DNA registry is not widely disseminated. The DNA sample requirement is similar to being fingerprinted when arrested for a crime. This factor weighs in favor of finding the statute is not punitive.

### 8. Effects of AS 44.41.035

Considering the seven factors, we conclude the effects of AS 44.41.035 and its implementing statutes are not punitive in nature. The DNA registry has a valid regulatory purpose of collecting and maintaining identifying information in a database to aid law enforcement efforts and to enhance public safety similar to the purposes of fingerprinting. The concerns we had with the burdensome and invasive requirements of ASORA are not present under the DNA registry scheme. DNA information collected from persons subject to the DNA registry act is prohibited from being publicly distributed. And the means of collecting the DNA — a mouth swab — is minimally intrusive. We conclude that the DNA sample requirement does not violate the ex post facto clause in article I, section 9 of the Alaska Constitution.

---

[47] *Id*. (cross-references omitted).

We similarly conclude that the DNA sample requirement does not violate the ex post facto clause in article I, section 10 of the U.S. Constitution.[48] The Supreme Court has employed the intent-effects test to ex post facto claims under the U.S. Constitution.[49] In *Smith v. Doe*, the Supreme Court concluded that ASORA satisfied the federal intent-effects test.[50] If the Supreme Court concluded ASORA, a far more intrusive (and in our view, punitive) law, did not offend the U.S. Constitution's ex post facto clause, the Court certainly would uphold a federal ex post-fact challenge to Alaska's DNA registry process. We conclude the DNA registry act passes muster under the U.S. Constitution's ex post facto clause. We affirm the superior court's decision.

## C. Simmons Was Not Prejudiced By The Denial Of Counsel.

In *McGinnis v. Stevens*, we outlined "the contours and substance of the due process rights to which a prisoner is entitled in prison disciplinary hearings under the federal and Alaska constitutions."[51] We held that inmates have the right to counsel in major disciplinary proceedings "where misconduct constituting a felony is charged."[52] This is because the realistic possibility of criminal charges in such a case presents concerns of self-incrimination.[53]

The superior court ruled that the Department of Corrections violated Simmons's constitutional rights by denying Simmons a lawyer. The Department does

---

[48] U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . ex post facto Law . . . .").

[49] *Doe*, 189 P.3d at 1007 (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

[50] 538 U.S. at 92-106.

[51] 543 P.2d 1221, 1224 (Alaska 1975).

[52] *Id.* at 1231-35.

[53] *Id.* at 1233-35.

not appeal this ruling, and we agree the Department's refusal to provide counsel to Simmons in the face of clear case law requiring it to do so was a clear violation of Simmons's constitutional right to counsel.

However, the Department's violation of an inmate's constitutional right to counsel in itself is not sufficient to reverse the Department's disciplinary decision — to overturn a prison disciplinary decision AS 33.30.295(b)(1) requires the court to find that a violation of the prisoner's fundamental constitutional rights "prejudiced the prisoner's right to a fair adjudication." The superior court ruled that the Department's denial of counsel to Simmons was "harmless error." We interpret this as a ruling that Simmons's right to a fair adjudication was not prejudiced by the Department's denial of counsel to him, and so interpreted, we agree with the superior court.

We have explained that the right to counsel under the Alaska Constitution for inmates charged with major disciplinary proceedings constituting a felony stems from the U.S. Supreme Court's decisions in *Miranda v. Arizona* and *Mathis v. United States*.[54] In *Miranda*, the Court held that persons facing custodial interrogation must be informed of their right to remain silent and, if indigent, must be provided a lawyer if requested;[55] in *Mathis*, the Court applied *Miranda* to an interrogation in a "routine tax investigation" where the person was someone already in custody for unrelated reasons.[56] In *McGinnis*, we held under the Alaska Constitution that these self-incrimination concerns necessitated that inmates charged with conduct constituting a felony in a major disciplinary

---

[54] *Id.* at 1235 (citing *Miranda v. Arizona*, 384 U.S. 436 (1966); *Mathis v. United States*, 391 U.S. 1 (1968)).

[55] *Miranda*, 384 U.S. at 467-74.

[56] *Mathis*, 391 U.S. at 2-5.

proceeding must be provided a lawyer.[57] The rationale underlying an inmate's due process right to counsel when charged with felonious misconduct in a major disciplinary proceeding is that the inmate may make incriminating statements in the administrative proceeding and the State may attempt to use these statements against the inmate in parallel or subsequent criminal proceedings.[58] The presence of counsel in the disciplinary proceeding in most cases should protect the inmate from making self-incriminating statements.

In this case, however, counsel would not have made any difference. There was only one material fact in issue: did Simmons refuse to provide a DNA sample as required by law? Simmons did not dispute this fact, and he could not have denied it as a practical matter because he in fact refused to provide a DNA sample and to this day continues to assert that the State has no legal right to require him to provide a DNA sample. Indeed, Simmons admitted this sole material fact at every stage in the proceedings, including in his appellant's brief to this court. There being no disputed material facts at issue, his arguments were purely legal, and as explained above, none of his legal arguments have merit. Thus, on the facts of this case, we are unable to conclude

---

[57] *McGinnis*, 543 P.2d at 1232-35. Although the U.S. Supreme Court rejected this interpretation of *Miranda* and *Mathis* for the U.S. Constitution in *Baxter v. Palmigiano*, 425 U.S. 308, 314-15 (1976), our holding in *McGinnis* was based on the Alaska Constitution. *See McGinnis*, 543 P.2d at 1236 ("[W]e have concluded that Alaska's Constitution requires greater due process protections than the United States Constitution in the following respects: a prisoner has the right to counsel in conjunction with major disciplinary proceedings when felony prosecution may result . . . ."); *see also James v. State, Dep't of Corr.*, 260 P.3d 1046, 1051 n.17 (Alaska 2011), *overruled on other grounds by Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018); *McGinnis v. Stevens*, 570 P.2d 735, 736-37 (Alaska 1977).

[58] Simmons was criminally charged for his refusal to provide a DNA sample, but the State later dismissed the charges. *State v. Simmons*, No. 3PA-14-00333 CR (Alaska Super., dismissed Apr. 5, 2016).

that the Department's unconstitutional failure to provide Simmons with an attorney prejudiced his right to a fair adjudication.  So though it is undisputed the Department violated Simmons's constitutional right to counsel — which we strongly condemn — we must affirm the superior court because the violation did not prejudice Simmons.

## V.    CONCLUSION

We AFFIRM the superior court's decision upholding the Department of Corrections' disciplinary decision.