NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RICHARD B. DEREMER III, | ) | |
| | ) | Supreme Court No. S-17856 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-05031 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF CORRECTIONS, | ) | |
| | ) | No. 2007 – January 24, 2024 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Richard B. DeRemer III, pro se, Wasilla, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

I.    INTRODUCTION

The Alaska Department of Corrections (DOC) determined that a prisoner violated a regulation and imposed a sanction of punitive segregation after the prisoner tested positive for suboxone during a random urinalysis test. The prisoner filed an administrative appeal to the facility superintendent, who affirmed the finding. He then

---

\*      Entered under Alaska Appellate Rule 214.

appealed to the superior court, which affirmed the administrative decision. Because the prisoner does not show that DOC violated his constitutional rights or that a violation prejudiced him, we affirm DOC's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

In December 2018 Goose Creek Correctional Center inmate Richard B. DeRemer III was required to provide a sample for random urinalysis (UA). DeRemer was strip searched, and a correctional officer gave him a sealed UA cup. The officer watched DeRemer open the cup and heard the security sticker tear. The officer tested the sample with a dip test. The officer was unable to see one of the test lines. Two other officers viewed the test strip and concluded the test was positive for suboxone. The officer who conducted the test documented the chain of custody for the sample cup on an evidence record form, Form 1208.08B, and also completed a substance abuse testing form, Form 808.14A. He recorded the chain of custody information only on the evidence record form.

DeRemer was charged with a high-moderate infraction for possessing, using, or introducing contraband into Goose Creek, in violation of 22 Alaska Administrative Code (AAC) 05.400(c)(7).[1] A hearing advisor was appointed for DeRemer.[2] DeRemer met with his advisor and requested video recordings of both the intake area and his holding cell from the night of his test, a statement from another inmate, and photos of the drug test determination for use in his disciplinary hearing. In

---

[1] "[P]ossession, use, or introduction of contraband, . . . which directly threatens the security of the facility, such as excess money or unauthorized drugs" is a high-moderate infraction. 22 AAC 05.400(c)(7). High-moderate infractions can lead to a loss of statutory good time, a loss of activity time, reprimand, and segregation.

[2] *See* 22 AAC 05.440(a) (entitling accused prisoner "to the assistance of an advocate in investigating the facts and preparing and presenting a defense at a disciplinary hearing").

response to DeRemer's request, the hearing officer directed him to provide any questions he had for the other prisoner pursuant to 22 AAC 05.430,[3] and to explain why he wanted the video so that the officer could determine its relevance. The hearing officer advised DeRemer that he was not entitled to photos "per policy."[4] DeRemer's advisor obtained the requested witness statement from the other prisoner.

Before the start of the disciplinary hearing, the hearing officer allowed DeRemer to review the evidence record form. DeRemer denied using drugs and pled not guilty. He argued that the charge violated his equal protection rights because "[t]he chain of custody was not complete" and "[a]nother inmate had his case dismissed because of chain of custody issues." He also challenged his drug test on the grounds that he was not present during the testing of his sample. Finally, he challenged the alleged use of the improper form — the evidence record form, Form 1208.08B, instead of the substance abuse testing form, Form 808.14A — to document the chain of custody.

The hearing officer acknowledged that the chain of custody was documented on the wrong form but claimed that his review of the video showed no break in the chain of custody. He stated that DeRemer had viewed the form at the hearing and had not asked to see it before the hearing. And the hearing officer stated that he did not know anything about the other prisoner's disciplinary matter and that there was no evidence to confirm that the circumstances were the same.

---

**3**    *See* 22 AAC 05.430(b) ("The superintendent shall allow the accused prisoner or advocate to have a reasonable opportunity to interview witnesses, collect statements, or compile other evidence, if that action would not create a risk of reprisal or undermine security. The accused prisoner must use a staff advocate to help in this task if either the prisoner or the witness is being held in segregation or the witness to be interviewed is a staff member.").

**4**    DeRemer did not ask to view the photos during the disciplinary hearing, but DOC provided the photos of the drug test as part of the record for this case.

The hearing officer found DeRemer guilty of the charged violation based on the report and hearing testimony. The hearing officer concluded that there was no violation of DOC policy or Goose Creek's standard operating procedure because neither of them "require the inmate to be present when the sample is tested." He also noted that DeRemer "was given the opportunity to send the sample out for confirmation testing, but chose not to." The hearing officer further found that although the chain of custody was not documented on a substance abuse testing form, as required, it was in fact documented and the use of the wrong form was a "harmless error." The hearing officer did not address DeRemer's equal protection claim. He found DeRemer guilty and imposed 20 days of punitive segregation — with 15 days suspended "if no guilty write ups for 180 days" — and 30 days' loss of commissary privileges.

DeRemer timely appealed the disciplinary decision to the facility superintendent.[5] The superintendent denied DeRemer's appeal, concluding that documenting the chain of custody on the wrong form was a harmless error.

## B. Proceedings

In March 2020 DeRemer, representing himself, appealed the superintendent's decision to the superior court.[6] DeRemer argued that his due process rights were violated because DOC did not follow the correct testing standards, he was not provided with video or photographic evidence, the chain of custody was documented on the wrong form, and the hearing officer was not impartial. He also argued that his equal protection rights were violated because DOC had dismissed another inmate's disciplinary action because of a chain of custody issue, but had not dismissed his. DOC responded that DeRemer was focused on "perceived irregularities

---

[5]    "[T]he prisoner must submit the written appeal to the superintendent of the facility where the disciplinary infraction was heard within three working days after receipt of the disciplinary tribunal's written decision . . . ." 22 AAC 05.480(b).

[6]    "A prisoner may obtain judicial review by the superior court of a final disciplinary decision . . . ." AS 33.30.295(a).

about form, not substance," that any irregularities did not prejudice him, and that his equal protection claim had no factual support. DOC also argued that DeRemer's challenge to the credibility of the officer that collected his sample "should not be credited."

The superior court affirmed DOC's decision. The court concluded that DeRemer's due process rights and equal protection rights were not violated. It reasoned that although the wrong form was used, "that document was available to DeRemer prior to and at his disciplinary hearing," and thus found "no showing of prejudice." It found that "DOC policy does not require that a urine sample be tested in the presence of the prisoner" and even if it did, "DeRemer ha[d] not shown how [the officer's] failure to comply with such a policy impacted his due process rights." The court noted that "DeRemer did not request that the sample be tested again by a lab or seek testimony from [the officer] at his disciplinary hearing."

The court then addressed DeRemer's concerns about the photo and video evidence. The court found that "DeRemer had requested video evidence and both [the hearing officer] and DeRemer discussed the video evidence prior to the start of the disciplinary hearing." It also noted that "[t]he hearing officer viewed the video evidence and confirmed that there was no break in the chain of custody and that the sample was not tampered with." And the court concluded that there was "no indication that the photocopy of the test strip was evidence in DeRemer's favor or that DeRemer was prejudiced as a result of the late disclosure of the test strip."

The court also found that DeRemer had not shown that the hearing officer was biased against him or that "his right to equal protection under the law was infringed."

## III. STANDARD OF REVIEW

"Appellate judicial review of prisoner disciplinary proceedings is available when 'issues of constitutional magnitude' are involved."[7] We independently review the merits of the administrative decision.[8] We will reverse a DOC disciplinary decision only if "the prisoner's fundamental constitutional rights were violated . . . and that violation prejudiced the prisoner's right to a fair adjudication."[9] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[10] Other constitutional questions and "whether a party has suffered prejudice are likewise reviewed de novo."[11]

## IV. DISCUSSION

### A. DeRemer's Due Process Rights Were Not Violated.

"An inmate facing a major disciplinary proceeding is . . . entitled to a number of procedural safeguards under the Due Process Clauses of the federal and state constitutions."[12] The Due Process Clause of the Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[13] "Punitive segregation is a liberty deprivation sufficient to trigger the Alaska

---

[7] *Simmons v. State, Dep't of Corr.*, 426 P.3d 1011, 1015 (Alaska 2018) (quoting *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

[8] *Id.* (citing *James*, 260 P.3d at 1050).

[9] AS 33.30.295(b)(1); *Nordlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1181 (Alaska 2022).

[10] *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018) (quoting *James*, 260 P.3d at 1050).

[11] *Id.*; *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 273 (Alaska 2001) (quoting *Peter v. Progressive Corp.*, 986 P.2d 865, 867 (Alaska 1999)).

[12] *Abruska v. State, Dep't of Corr.*, 902 P.2d 319, 321 (Alaska 1995); *see also* 22 AAC 05.455(a) ("A prisoner is presumed innocent of an infraction, and [DOC] has the burden of establishing guilt.").

[13] Alaska Const. art. I, § 7.

Constitution's due process guarantee."[14]  Because DeRemer was subject to punitive segregation, he was entitled to due process protections.

"In order to reverse a disciplinary decision, we must find both that a constitutional right was violated and that the violation prejudiced the inmate's right to a fair adjudication."[15]  "Failure of a staff member to follow [DOC] regulations . . . does not invalidate a [disciplinary] decision absent a showing of prejudice by the prisoner."[16]

### 1.  DeRemer was not prejudiced by the use of the wrong form.

Governing regulations require DOC to "maintain a manual comprised of policies and procedures established by the commissioner to interpret and implement relevant sections of the Alaska Statutes and 22 AAC."[17]  The substance abuse testing policy[18] provides that testing "be performed at the lowest threshold testing level specified by the manufacturer of the testing device."  If a test result is positive, the container must be sealed, "secured[,] and stored pursuant to the manufacturer's or laboratory's specifications."  The officer that performed the test must then write an incident report, provide a copy of the report to the prisoner, and inform the prisoner of the option to request a confirmation test immediately following the positive test.

---

[14]  *Barber v. State, Dep't of Corr.*, 314 P.3d 58, 64 (Alaska 2013).

[15]  *Nordlund*, 520 P.3d at 1182 (quoting *Huber v. State, Dep't of Corr.*, 426 P.3d 969, 975 (Alaska 2018)).

[16]  22 AAC 05.610.

[17]  22 AAC 05.155.

[18]  DOC, POLICIES AND PROCEDURES 808.14: Substance Abuse Testing (2013), https://doc.alaska.gov/pnp/pdf/808.14.pdf.

DeRemer argues that DOC's failure to use the correct form was "reckless and arrogant" and therefore not harmless error.[19] But he does not claim there was a problem with the actual chain of custody, only that it was written on the wrong form.

It is undisputed that the officer documented the chain of custody on the evidence record form instead of the substance abuse test form. As DOC notes, the forms "collect the same information — who was handling the items, their purpose, and where the items were placed" — and DeRemer reviewed the evidence record form. In addition, "[t]he hearing officer viewed the video evidence and confirmed that there was no break in the chain of custody and that the sample was not tampered with." The court concluded that "[t]here is no indication that the documentation of the chain of custody on form 1208.08B instead of form 808.14A violated DeRemer's due process rights or prejudiced him." The superior court did not err.

**2.    DeRemer conceded that the sample was sealed in his presence.**

DeRemer also argues that separating him from his urine sample "for about 40 minutes" and not sealing the sample in his presence violated his due process rights. DOC responds that the sample was sealed in his presence and that there is no policy requiring it to test the sample in DeRemer's presence. And DOC also observes that DeRemer did not seek confirmation testing or call and cross-examine the officer that conducted the test.

---

[19]    DeRemer also claims that only he and his cellmate were tested and argues that it was therefore not a random drug test. Yet policy 808.14 only requires that random testing be "approved by the Shift Supervisor or higher authority." *See id.* Because the substance abuse testing form states that the test was random and DeRemer does not argue that the test was not approved by the shift supervisor or higher authority as required by policy 808.14, we do not address this claim. *See Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) ("Though '[w]e apply a more lenient standard to pro se litigants' . . . 'a pro se litigant's briefing must allow his or her opponent and this court to discern the pro se's legal argument.' ").

The record indicates that the sample was sealed in DeRemer's presence. And DeRemer already conceded this; he wrote in his reply brief in the superior court that when he was "asked to seal the urine sample cup, [he] refused to sign the sticker seal and participate." It is only on appeal to this court that DeRemer claims that the sample "was not sealed in his presence either."[20] DeRemer failed to preserve this issue.[21]

### 3.  DOC's handling of video evidence did not prejudice DeRemer.

DeRemer seemingly argues that because he was not shown video of his urine sample prior to testing the sample, he is entitled to an assumption that the sample was tampered with.[22] He claims that the video shows his sample was not actually tested. DOC argues that the record shows that "DeRemer did watch the video of the Intake area" and that "[t]here was no error in the handling of the video evidence."

A prisoner facing a disciplinary hearing is entitled to "present witnesses and other evidence" upon a timely written request.[23] Alaska Appellate Rule 604(b) requires that "[p]hysical exhibits . . . be retained by the agency unless specifically

---

[20]  DeRemer also claims that the testing officer did not ask him if he would like to send the sample to the laboratory for testing. But he indicated during the disciplinary hearing that he was familiar with the policy and knew that he could request a laboratory test. DeRemer has not shown that he suffered any prejudice from the testing officer's failure to ask him about sending the sample to the laboratory. *See* 22 AAC 05.610.

[21]  *See Bunton v. Alaska Airlines, Inc.*, 482 P.3d 367, 373 (Alaska 2021), *as rev'd on reh'g* (Mar. 31, 2021) ("Appellants must show they have raised an issue in the superior court to preserve the issue for appeal." (citing *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 225 (Alaska 2014))).

[22]  *Cf. Thorne v. Dep't of Pub. Safety*, 774 P.2d 1326, 1330-31 (Alaska 1989) (holding that State's failure to preserve videotape of driver's field sobriety test violated his due process rights, and that appropriate remedy on remand was to presume destroyed evidence would have been favorable to driver).

[23]  22 AAC 05.430(a); *see Walker v. State, Dep't of Corr.*, 421 P.3d 74, 82 (Alaska 2018).

requested by the court."[24] DeRemer did not claim that he did not view the video when he appealed his claim to the superintendent. Although it is unclear whether DeRemer viewed the entire video, it is clear that the video was in DOC's possession because the hearing officer reviewed the video and found no break in the chain of custody. The video is part of the administrative record and preserved for appeal.[25] DOC's handling of the video evidence did not prejudice DeRemer.

**B.     DeRemer Did Not Provide Evidence Of An Equal Protection Claim.**

DeRemer argues that an "identically situated" prisoner had his case dismissed and the superior court therefore erred when it concluded that DOC did not violate his equal protection rights. He claims that even though his advisor could not have obtained relevant materials about the "identically situated" prisoner, the hearing officer could have obtained it. He also suggests that the hearing officer lied and did in fact have knowledge of the "identically situated" prisoner's hearing. DOC counters that the hearing officer "had no investigatory duty" and that there is no evidence to support DeRemer's claim.

The Alaska Constitution provides that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[26] The equal protection clause commands "state and local governments to treat those who are similarly situated

---

[24]     Alaska R. App. P. 604(b)(1)(B)(iii).

[25]     DeRemer appears to be correct that the video was not presented to the superior court and is not in the record we received from that court. But again the agency retains physical records unless requested by the court. Alaska R. App. P. 604(b)(1)(B)(iii).

[26]     Alaska Const. art. I, § 1.

alike."[27] The party alleging a violation of the equal protection clause must demonstrate that someone similarly situated was treated differently.[28]

DeRemer alleged that another prisoner's case was dismissed because he was locked in a cell and his drug test was completed 15 feet away from him. But the hearing officer stated that neither he nor DeRemer really knew if the circumstances in both cases were the same. The superior court found that "DeRemer did not request testimony from [the other inmate] prior to his disciplinary hearing and [the hearing officer] was under no obligation to independently locate and interview [him]."

Without evidence that there actually was a prisoner similarly situated to him, DeRemer cannot prove that he was treated differently from that prisoner. DOC gave him a reasonable opportunity to interview witnesses and collect statements.[29] But DeRemer did not ask to interview anyone with knowledge of the other prisoner's case.[30] The superior court did not err by concluding that DeRemer failed to prove an equal protection violation.[31]

---

[27]     *Watson v. State*, 487 P.3d 568, 570 (Alaska 2021) (quoting *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007)).

[28]     *Alaska C.L. Union v. State*, 122 P.3d 781, 787 (Alaska 2005).

[29]     "The superintendent shall allow the accused prisoner or advocate to have a reasonable opportunity to interview witnesses, collect statements, or compile other evidence, if that action would not create a risk of reprisal or undermine security." 22 AAC 05.430(b).

[30]     "The accused prisoner may present witnesses and other evidence in the accused prisoner's defense . . . if written notice of the witnesses to be called or evidence to be admitted is given to the disciplinary tribunal no later than 24 hours before the hearing, unless good cause is shown why this time requirement cannot be met." 22 AAC 05.430(a).

[31]     We do not reach DeRemer's remaining claims as they were not raised before the superior court. *See Walker v. State, Dep't of Corr.*, 421 P.3d 74, 78 (Alaska 2018) (holding that claim not raised below was waived).

## V.    CONCLUSION

We AFFIRM DOC's decision.