*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SCOTT WALKER, ) | |
| ) | Supreme Court No. S-16202 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-14-02547 CI |
| v. ) | |
| ) | O P I N I O N |
| STATE OF ALASKA, ) | |
| DEPARTMENT OF CORRECTIONS, ) | No. 7237 – April 27, 2018 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Scott Walker, pro se, Wasilla, Appellant.[*] Matthias Cicotte, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Susan Orlansky, Reeves Amodio, LLC, Anchorage, for Amicus Curiae ACLU of Alaska Foundation. Cynthia Strout, Anchorage, for Amicus Curiae Alaska Association of Criminal Defense Lawyers.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

---

[*] This case was consolidated with *Huber v. State, Department of Corrections*, No. S-16190, and *DeRemer v. State, Department of Corrections*, No. S-16194, for purposes of oral argument. Christopher V. Hoke, Hoke Law, Anchorage, counsel of record for Huber and DeRemer, presented argument on behalf of Walker.

## I.    INTRODUCTION

The Alaska Department of Corrections (DOC) found an inmate guilty of making a false statement to a staff member about work he was supposed to be doing and ordered the inmate to pay in restitution half the amount of his wages for that work.  The inmate appeals, arguing that DOC violated his due process rights by refusing to allow him to call witnesses at his disciplinary hearing.  We conclude that Walker did not waive his due process claim by failing to raise it during the administrative appeal process.  We also recognize that prisoners have a constitutional right to call witnesses at a disciplinary hearing and that the hearing officer's failure to call Walker's requested witnesses was prejudicial.  We thus reverse the disciplinary decision and remand for a new hearing.

## II.    FACTS AND PROCEEDINGS

Inmate Scott Walker started work in October 2013 as an Orientation Assistant in the Special Management Unit at Goose Creek Correctional Center.  Walker wrote up an outline of topics he thought should be covered at orientation for new inmates and awaited further instructions.

In August 2014, Criminal Justice Technician Brooke Baumgartner met with Walker to discuss his job.  She learned during the meeting that, although Walker had continued to be paid, he had not actively worked since November 2013.  According to Baumgartner, Walker admitted to "taking advantage of the situation."  He told her that he had attempted to inform four different staff members about the payroll mistake, but when pressed he could only name two officers.  Walker also said he had "sent cop-outs"[1]

---

[1]    A "cop-out" is a "Request for Interview Form" used by inmates to contact officers.  A DOC policy requires that completed cop-outs be added to the inmate's file. *See James v. State, Dep't of Corr.*, 260 P.3d 1046, 1049 n.6 (Alaska 2011); STATE OF ALASKA, DEP'T OF CORR., POLICIES AND PROCEDURES §§ 808.11(VII)(A)(2)(f), 808.11a (2008), http://www.correct.state.ak.us/commissioner/policies-procedures.

regarding the situation. Baumgartner contacted both of the officers Walker had named, and one stated that Walker had never informed her of the mistake. She also found that Walker's file did not contain any pertinent cop-outs. Baumgartner calculated that Walker had been overpaid by $633.50.

Based on this information, DOC charged Walker with the infractions of "stealing, destroying, altering or damaging government property" and "lying or providing a false statement to a staff member."[2] After receiving notice of a scheduled disciplinary hearing, Walker timely requested the presence of three witnesses: the two officers he claimed to have informed of the overpayment issue and an inmate working as a Job Services Clerk who also claimed to have reported Walker's overpayment issue to one of the officers. According to Walker, Officer Wright,[3] who presided over the disciplinary hearing, denied the request off the record and without explanation.

At the disciplinary hearing, Walker testified that he "never made a false statement to anyone" and denied telling Baumgartner that he had "tak[en] advantage of the situation." He stated that originals of cop-outs are not kept in an inmate's file, which could explain why Baumgartner did not find any record of the cop-outs he claimed to have sent. Walker's testimony was often interrupted by Officer Wright, who twice shut off the recorder and, according to Walker, used "intimidation" to influence Walker's testimony.

Baumgartner also testified at the hearing, and Walker cross-examined her. When asked by Walker to identify the "untruth" he had told her, Baumgartner responded that Walker had "stated that he [had] informed four different staff members that he . . .

---

    [2]    22 Alaska Administrative Code (AAC) 05.400(c)(5), (d)(4) (2004 & Supp. 2015).

    [3]    Officer Wright's full name is not in the record.

was not working but getting paid" and that Walker had "also stated that he sent four cop-outs" on the issue. Baumgartner viewed the former statement as untrue because Walker "could only identify two people" he had told. Baumgartner viewed the latter statement as untrue because neither she nor Walker had been able to locate the cop-outs. Walker countered that he had found one of the cop-outs, and he asserted that Baumgartner had "omitted" it from her report. But Baumgartner explained that she had not included the cop-out because it was irrelevant.

At the close of the hearing, Officer Wright summarized that "somewhere along the line, [Walker] omitted telling people that . . . [he was] getting paid for a job that [he was not] really doing." Accordingly, Officer Wright found Walker guilty of making a false statement to a staff member and ordered him to pay restitution of $316, just under half the amount by which he was overpaid.

Walker appealed to the superintendent. He emphasized that he never made a false statement, but he did not raise any procedural concerns. The superintendent denied the appeal and concurred with Officer Wright's decision.

Walker then appealed to the superior court representing himself, reiterating the argument that no evidence supported the finding that he had made a false statement. He also made two new arguments for the first time: (1) DOC violated his procedural rights by refusing to allow him to call witnesses in his defense, and (2) the punishment of restitution was not allowed under the circumstances of his case. The superior court affirmed DOC, determining that "some evidence" supported DOC's disciplinary decision and that Walker had waived the other claims by failing to raise them in his administrative appeal to the superintendent.

This appeal followed. Walker, still representing himself, repeats his argument from the superior court that DOC violated his due process rights by refusing

to allow him to call witnesses in his own defense.[4]  After the parties submitted their initial briefing, we requested supplemental briefing on the following questions:  (1) Do the prisoner discipline statutes or regulations require a prisoner to raise an issue on appeal to the superintendent in order to preserve the issue for judicial review?  (2) In light of the broad authority given to the superintendent under 22 AAC 05.480, is it appropriate to require the issue preservation typical of adversarial judicial proceedings? (3) Does a prisoner have notice that the failure to raise an issue on appeal to the superintendent will result in waiver of that issue?

## III.   DISCUSSION

### A.     Walker Did Not Forfeit His Due Process Claim By Failing To Raise It During The Administrative Appeal.

"As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved."[5]  Previously, we have required litigants to exhaust issues at the agency level before raising them on appeal in the superior court.[6]  And in *James v. State, Department*

---

[4]     He also argues that DOC violated his due process rights by imposing a sanction (restitution) not authorized by regulation and that no evidence supported the decision reached at the disciplinary hearing.  Our resolution of Walker's claim concerning his right to call witnesses obviates consideration of these other claims of error.

[5]     *1000 Friends of Md. v. Browner*, 265 F.3d 216, 227 (4th Cir. 2001) (quoting *Pleasant Valley Hosp., Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir. 1994)); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

[6]     *See Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1256-57 (Alaska
(continued...)

*of Corrections*, we extended the issue exhaustion requirement to prison disciplinary appeals.[7] Walker did not raise his procedural arguments before the superintendent; *James* thus appears to preclude Walker's arguments on appeal.

This case, however, compels us to reconsider the application of an issue exhaustion requirement to prison disciplinary appeals. Though an issue not presented to an administrative decisionmaker generally cannot be argued for the first time in court, "such a rule is not always appropriate."[8] Determining whether issue exhaustion is appropriate in any given context "requires an understanding of [exhaustion's] purposes and of the particular administrative scheme involved."[9] Thus, our cases mandating issue exhaustion in several types of agency proceedings should not be construed to "announce an inflexible practice" of mandating issue exhaustion in *all* such proceedings.[10] Rather, we must carefully analyze the particular administrative scheme at issue before imposing an issue exhaustion requirement in a new context. We neglected to conduct any such particularized analysis in *James*;[11] we remedy the oversight now.

---

[6](...continued)
2007); *Wagner v. Stuckagain Heights*, 926 P.2d 456, 459 (Alaska 1996); *Ratliff v. Alaska Workers' Comp. Bd.*, 721 P.2d 1138, 1142 (Alaska 1986).

[7]     260 P.3d 1046, 1050 n.12 (Alaska 2011) (deeming appellant's challenges to prison disciplinary decisions "waived . . . because they were not raised during the administrative proceedings").

[8]     *Sims v. Apfel*, 530 U.S. 103, 112-13 (2000) (O'Connor, J., concurring).

[9]     *McKart v. United States*, 395 U.S. 185, 193 (1969) (discussing exhaustion of administrative remedies). In *Sims* the Supreme Court cited this language in its analysis of issue exhaustion. 530 U.S. at 109-10.

[10]     *Hormel v. Helvering*, 312 U.S. 552, 556 (1941).

[11]     In *James* we cited *Trustees for Alaska v. State, Department of Natural*
(continued...)

As a threshold matter, we note that issue exhaustion in administrative appeals is often mandated by statute or regulation.[12] When this is the case, we do not need to determine whether a judicially created issue exhaustion requirement is appropriate.[13] Here, however, the regulation that governs the intra-agency appeal process does not articulate an issue exhaustion requirement.[14] Neither does the statute that governs appeals from the final decision of the DOC.[15] As the State notes, the statute and regulation together require prisoners to exhaust all *administrative remedies* before filing an appeal in superior court.[16] But while issue exhaustion and exhaustion of

---

[11](...continued)
*Resources*, 865 P.2d 745, 748 (Alaska 1993), which addressed issue exhaustion not in the context of prison disciplinary proceedings but rather in the context of an administrative challenge to a lease of state land for oil development. *James*, 260 P.3d at 1050 n.12. More detailed analysis of the issue exhaustion requirement was unnecessary in *James* because an alternative ground — deficient appellate briefing — independently precluded consideration of the appellant's arguments. *See id.*

[12] *See Sims*, 530 U.S. at 107-08 ("[R]equirements of administrative issue exhaustion are largely creatures of statute."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952).

[13] *See Sims*, 530 U.S. at 107-08; *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1068 (D.N.M. 2014) ("[C]ourts may impose an issue-exhaustion requirement where none exists in the statute or regulation, but . . . they may not remove or disregard a statute or regulation that requires issue exhaustion."), *amended in part on other grounds*, No. CIV. 12-0069 JB/KBM, 2015 WL 5138286 (D.N.M. Aug. 26, 2015).

[14] *See* 22 AAC 05.480 (2004).

[15] *See* AS 33.30.295.

[16] *See* AS 33.30.295(a) ("A prisoner may obtain judicial review by the superior court of a final disciplinary decision . . . ."); 22 AAC 05.480(o) ("A decision on appeal that has no further level of appeal under this section is a final decision and order

(continued...)

administrative remedies "can be concurrent concepts at times, . . . they are not synonymous."[17]  Accordingly, we reject the State's argument that an issue exhaustion requirement is "inherent" in the requirement that prisoner appellants exhaust administrative remedies.[18]

Having thus concluded that no statute or regulation mandates issue exhaustion, we must determine whether to impose such a requirement based on "an analogy to the rule that appellate courts will not consider arguments not raised before trial courts."[19]  To answer this question, we examine the unique characteristics of prisoner disciplinary proceedings.

First, and perhaps most importantly, we note that a "failure to notify claimants of any issue-exhaustion requirement . . . weighs against imposing one."[20]

---

[16](...continued)
of the department that may be appealed to the superior court in accordance with AS 33.30.295 and the Alaska Rules of Appellate Procedure.").

[17]     *Mass., Dep't of Pub. Welfare v. Sec'y of Agric.*, 984 F.2d 514, 523 n.8 (1st Cir. 1993) (citing 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 26:7 (2d ed. 1983)).  "Issue exhaustion" refers to the requirement that individual issues must be raised in an administrative appeal in order to raise those issues in a subsequent judicial proceeding; "exhaustion of administrative remedies" refers to the requirement that a party exhaust the administrative *process* as a predicate for judicial review.  *See Etchu-Njang v. Gonzales*, 403 F.3d 577, 581 (8th Cir. 2005).

[18]     *See Sims* 530 U.S. at 107 ("The Commissioner argues, in particular, that an issue-exhaustion requirement is 'an important corollary' of any requirement of exhaustion of remedies.  We think that this is not necessarily so and that the corollary is particularly unwarranted in this case." (citation omitted)).

[19]     *Id.* at 108-09.

[20]     *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 632 (9th Cir. 2008) (citing *Sims*, 530 U.S. at 113 (O'Connor, J., concurring)).

Administrative agencies exercise extensive control over the intra-agency appeals process; they enact the governing regulations, explain the process to litigants, and provide litigants with the appropriate forms for filing an appeal. Thus, where an agency declines to inform litigants of an issue exhaustion requirement during the administrative appeal process, permitting the agency to assert an issue exhaustion defense in court raises serious fairness concerns.[21] As indicated above, DOC regulations do not provide notice that failure to raise an issue during the administrative appeal process results in waiver of that issue.[22] Nor do the forms distributed to prisoners during the intra-agency appeals process. While we acknowledge that issue exhaustion generally serves important public policy objectives, here "the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve."[23]

Second, we also take into account the limited resources available to prisoners during the administrative appeal process. Prisoners have only "three working days after receipt of the disciplinary tribunal's written decision" to prepare and submit their appeals.[24] And under current DOC regulations, prisoners have no right to counsel

---

[21] *Cf. Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) ("If the [agency] wants inmates to provide specific types of information in their grievances, it should notify them of those requirements in advance rather than waiting until they have already completed the grievance process and filed a lawsuit." (citing *Sims*, 530 U.S. at 113 (O'Connor, J., concurring))), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[22] *See* 22 AAC 05.480.

[23] *Scott v. McDonald*, 789 F.3d 1375, 1378 (Fed. Cir. 2015) (quoting *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000)).

[24] 22 AAC 05.480(b).

or a staff advocate for legal assistance in preparing their appeal.[25]  We acknowledge that some particularly adept prisoners may be able to identify and develop constitutional claims while proceeding pro se.  And, as the State argues, our discussion in *James* could provide them with notice that they must do so.[26]  Nevertheless, it seems evident that most prisoners will lack the time and expertise necessary to effectively present their constitutional claims.[27]

Third, the statutory scheme governing appeals from prison disciplinary proceedings weighs against imposing an issue exhaustion requirement.  Issue exhaustion incentivizes parties to raise issues during the agency proceeding by circumscribing the scope of judicial review, thereby "allowing the agency . . . to apply its special expertise."[28]  However, AS 33.30.295 already circumscribes courts' authority to review

---

[25]    An inmate accused of a nonminor infraction has a right "to the assistance of an advocate in investigating the facts and preparing and presenting a defense at [the] disciplinary hearing," 22 AAC 05.440(a) (2004), and a staff advocate was in fact present at Walker's disciplinary hearing.  A prior regulation provided that inmates were entitled to a staff advocate in preparing their appeal as well.  *See Hertz v. Prewitt*, Nos. S-4365, S-4434, 1992 WL 12549802 (Alaska May 27, 1992) ("The prisoner may have the assistance of his or her advocate in preparing [the] appeal." (citing former 22 AAC 05.480(b) (am. 1/9/87))).  But that provision has since been removed.  *See* 22 AAC 05.480(b).

[26]    *Cf. Jovanov v. State, Dep't of Corr.*, 404 P.3d 140, 154 (Alaska 2017) (holding that a statute "establishing [a prisoner's] potential financial responsibility for medical care" provided adequate notice that DOC would not cover medical costs).

[27]    *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) ("To require a pro se plaintiff . . . to wade through the case law of this Circuit in order to preserve her right to appellate review would be an unreasonable burden."); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008).

[28]    Jon C. Dubin, *Torquemada Meets Kafka:  The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 COLUM. L. REV.

(continued...)

final disciplinary decisions: Prisoners may obtain judicial review of a final disciplinary decision only when they allege "violation of . . . fundamental constitutional rights." Effectively, then, the question before us is whether prisoners should be required to raise *constitutional* claims during their administrative appeal in order to avoid waiver. And superintendents have no special expertise to address constitutional claims. Judicial review of such claims thus does not "impermissibly displace agency skill or invade the field of agency discretion."[29]

DOC's regulations reflect prison superintendents' lack of expertise in constitutional matters. Under 22 AAC 05.480(f), superintendents "shall consider whether the disciplinary tribunal's findings justify the adjudication or the penalty imposed." However, the regulation does not impose a similar requirement to review constitutional claims. Nor does the governing regulation explicitly grant superintendents *discretionary* authority to review such claims.[30]

Having examined the notice given to prisoners of the need to exhaust issues during the administrative appeal, the resources afforded them during the administrative

---

[28](...continued)
1289, 1307 (1997).

[29]     *Atl. Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 782 (D.C. Cir. 1984) (declining to require exhaustion of administrative remedies); *see also* Dubin, *supra* note 28, at 1330 n.198 ("[S]ome courts have crafted an exception to issue exhaustion in situations where the 'issues involved were strictly legal and did not call for agency expertise.' " (quoting STEPHEN G. BREYER & RICHARD B. STEWART, ADMINISTRATIVE LAW AND REGULATORY POLICY: PROBLEMS, TEXT, AND CASES 1130 (3d ed. 1992))).

[30]     Our precedent may preclude DOC from mandating such review. *See Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 36 (Alaska 2007); *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 795 n.27 (Alaska 2002) ("Administrative agencies have no jurisdiction to decide issues of constitutional law such as a violation of one's right to privacy.").

appeal process, the regulation governing DOC intra-agency appeals, and the statute governing appeals from final disciplinary decisions, we hold that prisoners who fail to raise their constitutional claims during the administrative appeal process do not necessarily forfeit those claims. We overrule *James* to the extent that it is inconsistent with this holding.[31] In reaching this result, however, we take note of the fact that Walker brought his constitutional claim to DOC's attention during the initial stages of the disciplinary process. Walker requested the presence of three witnesses for his hearing; the officer who presided over the disciplinary hearing denied (or at least failed to grant) that request. Accordingly, we need not decide at this time whether issue exhaustion applies to issues that a prisoner never brings to DOC's attention or that a prisoner deliberately ignores.

We further note that our decision derives from a particularized analysis of prison disciplinary proceedings; it does not invalidate issue exhaustion requirements that we have applied to other types of agency proceedings.[32] We acknowledge that issue exhaustion generally furthers desirable policy objectives[33] — and that it would do so here. By (1) promulgating a regulation establishing an issue exhaustion requirement; (2) providing prisoners with forms explaining that requirement; and (3) providing prisoners with forms that enumerate prisoners' constitutional rights during disciplinary hearings, DOC could alleviate the concerns that now preclude us from concluding that Walker's due process claims have been waived.

---

[31] *See James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 n.12 (Alaska 2011); *cf. Engstrom v. Engstrom*, 350 P.3d 766, 771 (Alaska 2015).

[32] *See, e.g., Thoeni v. Consumer Elec. Servs.*, 151 P.3d 1249, 1256-57 (Alaska 2007); *Wagner v. Stuckagain Heights*, 926 P.2d 456, 459 (Alaska 1996); *Ratliff v. Alaska Workers' Comp. Bd.*, 721 P.2d 1138, 1142 (Alaska 1986).

[33] Dubin, *supra* note 28, at 1307.

## B. The Hearing Officer's Failure To Call Walker's Requested Witnesses Was A Prejudicial Violation Of Walker's Constitutional Rights.

Having concluded that Walker has not waived his due process claim, we must determine whether the hearing officer violated his due process rights and whether the violation prejudiced his right to a fair adjudication.[34] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[35] Whether a party has suffered prejudice is likewise reviewed de novo.[36]

"An inmate facing a major disciplinary hearing is entitled to call witnesses . . . ."[37] Major disciplinary proceedings include those that could "subject inmates to serious punishment such as solitary confinement and loss of good time credit."[38] Walker was cited for two infractions,[39] either of which could have subjected him to punitive segregation or loss of good time.[40] He thus had a due process right to call witnesses in his defense.[41]

---

[34] AS 33.30.295.

[35] *James*, 260 P.3d at 1050 (quoting *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003)).

[36] *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1015 (Alaska 2003).

[37] *Abruska v. Dep't of Corr., State*, 902 P.2d 319, 321-22 (Alaska 1995).

[38] *James*, 260 P.3d at 1052; *see also McGinnis v. Stevens*, 543 P.2d 1221, 1237 (Alaska 1975) ("We thus distinguish between those disciplinary proceedings which threaten major deprivations of a prisoner's limited liberty and those which do not.").

[39] 22 AAC 05.400(c)(5), (d)(4).

[40] 22 AAC 05.470(a)(3), (5).

[41] *Abruska*, 902 P.2d at 322.

As we acknowledged in *Abruska*, the right to call witnesses is "subject to certain limitations";[42] DOC regulations provide that a hearing officer "may decline, for compelling reasons, to call a witness that the accused prisoner . . . has requested to appear."[43] However, the regulations also provide that:

> If the prisoner is found to have committed an infraction, the hearing officer . . . shall file a report, to be attached to the completed disciplinary tribunal report, listing all persons the prisoner requested to appear but were not called to testify . . . . This report must contain a brief statement of the reasons why the persons were not called . . . .[44]

Here, although Walker was found to have committed an infraction, the hearing officer did not attach the required report to DOC's disciplinary decision report. Because prisoners facing major disciplinary proceedings are entitled to call witnesses, and because we are unable to evaluate why DOC denied Walker's request to call witnesses, we conclude that the hearing officer's failure to call Walker's requested witnesses constituted a violation of his due process rights.

We next consider whether the hearing officer's failure to call Walker's witnesses was prejudicial. Prior to the disciplinary hearing, Walker told Baumgartner that he had informed at least two officers about the payment mistake. He repeated this claim in his testimony at the disciplinary hearing. Baumgartner's incident report, however, stated that one of these officers had denied that Walker told him about being

---

[42]     *Id.* at 321.

[43]     22 AAC 05.430(c) (2004); *see also McGinnis*, 543 P.2d at 1230 ("To the extent that the calling of witnesses and presentation of evidence is repetitious or irrelevant, the chairman of the disciplinary committee is vested with the discretion under the Division's regulations, to limit testimony and the production of other evidence.").

[44]     22 AAC 05.430(c).

overpaid. Walker's testimony was thus contrary to the incident report. And his proposed witnesses could have helped resolve the factual dispute: Walker intended to call both of the officers he claimed to have informed of the situation, as well as another inmate who would have testified on the issue.

During the hearing, Baumgartner stated that Walker told an "untruth" when he initially told her "that he [had] informed four different staff members" about the overpayment issue but was subsequently "only [able to] identify two people." She also stated that Walker told an untruth when he told her he had submitted multiple cop-outs on the overpayment issue. But it is not clear whether these purported untruths formed the basis of the hearing officer's guilty finding; Officer Wright merely indicated that "somewhere along the line, [Walker] omitted telling people that [he was] . . . getting paid for a job that [he was not] really doing." Walker asserts that his requested witnesses could have plausibly testified that he *had* informed DOC employees about the overpayment issue. Accordingly, we conclude that the hearing officer's failure to call the three witnesses was not harmless.

## IV. CONCLUSION

For the reasons explained above, we REVERSE the superior court's decision affirming the decision of the Department of Corrections, and we instruct the superior court to REMAND the matter for a new disciplinary hearing.