NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

MICHAEL L. MCLAUGHLIN, )
)  Supreme Court No. S-17917
Appellant, )
)  Superior Court No. 3AN-18-06460 CI
v. )
)  MEMORANDUM OPINION
STATE OF ALASKA, DEPARTMENT )  AND JUDGMENT*
OF CORRECTIONS, )
)  No. 2034 – June 19, 2024
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Michael L. McLaughlin, pro se, Kenai, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

I.    INTRODUCTION

A self-represented prisoner appeals a disciplinary decision that he failed to obey a direct order to cease sharing or using other prisoners' telephone access personal identification numbers. The prisoner challenges the validity of the underlying order and alleges procedural defects in the disciplinary proceedings. We hold that the

---

\*      Entered under Alaska Appellate Rule 214.

order was a valid exercise of the superintendent's discretion and that there were no prejudicial errors in the disciplinary proceedings. We therefore affirm the disciplinary decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. DOC telephone-use policy

Various laws provide for and impact a prisoner's access to telephone communication while incarcerated. Inmates have a constitutional right to telephone access.[1] Alaska Statute 33.30.231(a) further requires that inmates "have reasonable access to a telephone," and the Department of Corrections (DOC) is required by regulation to establish procedures ensuring this access.[2] The regulation and DOC policy delegate authority to the prison superintendent to manage inmates' access to telephones at each prison.[3] Telephone access may be limited or suspended if the superintendent believes that "reasonable grounds exist to believe that the prisoner's

---

[1] *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1047-48 (9th Cir. 2002) (holding prisoners have First Amendment right to communicate with persons outside of prison, including by telephone); *Antenor v. State, Dep't of Corr.*, 462 P.3d 1, 15 (Alaska 2020) (holding "right to rehabilitation must . . . encompass telephone access for inmates," in light of vast size of state limiting ease of in-person visitation).

[2] 22 Alaska Administrative Code (AAC) 05.530(a).

[3] STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES, INSTITUTIONS, PRISONER COMMUNICATION, PRISONER ACCESS TO TELEPHONES 810.01.VII.A.1 (2007) (on file with court) (hereinafter DOC POLICY 810.01 (2007)). This policy was amended after the disciplinary proceeding and during this litigation. Subsequent versions of the policy specify that prisoners are not to use another prisoner's PIN. STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES, INSTITUTIONS, PRISONER COMMUNICATION, PRISONER ACCESS TO TELEPHONES 810.01.I.C.7 (2020), https://doc.alaska.gov/pnp/pdf/810.01.pdf.

telephone use threatens facility security, . . . or otherwise constitutes telephone abuse."[4] Several types of telephone calls are specifically prohibited, including calls using "Personal Identification Numbers (PINs) not issued directly by the facility."[5]

### 2. McLaughlin's telephone use and grievances

Michael McLaughlin is an inmate at the Wildwood Correctional Complex in Kenai. In late 2017 McLaughlin realized he was unable to use his PIN to make telephone calls. Prison staff informed him that his PIN was blocked because another prisoner had used it to make a call. McLaughlin filed a grievance in December 2017, arguing that "there is nothing in either the WWCC Handbook (2017) or DOC Policy 810.01 prohibiting" sharing PIN numbers. He also argued that as a self-represented litigant, almost all of his calls were "legal" and therefore could not be suspended at all.

In the time McLaughlin's grievance was processed, his telephone access was restored. The grievance investigator clarified orally, and the prison superintendent confirmed in writing, that phone PINs "are not to be traded" and that each prisoner should only use their own PIN. In response, McLaughlin asked that DOC clarify this restriction in the prisoner handbook so future inmates would be aware of it.

On January 5, 2018, one day after the grievance was investigated and denied, the prison issued a memorandum on the topic. The memorandum stated:

> Effective immediately, a prisoners' [sic] Securus pin number is private and considered confidential. Prisoners are not allowed to sell, trade, barter, give or in any way use their pin number other than for themselves. This directive is considered a direct order and any violations may result in disciplinary action. If you have any questions, please contact the Facility Standards Sergeant.

---

[4] DOC POLICY 810.01.VII.A.1.b. (2007), *supra* note 3; 22 AAC 05.530(c). If phone access is suspended, the prisoner must continue to have telephone access to an attorney. AS 33.30.231(a).

[5] DOC POLICY 810.01.VII.A.2.a(6) (2007), *supra* note 3.

The memo was signed by both the standards sergeant and the superintendent.

McLaughlin appealed the denial of the grievance, which a different superintendent denied. That superintendent reiterated that McLaughlin's telephone access had been restored, that he should not share his PIN, and that the policy had been clarified.

A few months later, McLaughlin filed a Request For Interview (RFI),[6] complaining that his mother's telephone number had been "restricted." A staff sergeant at the prison responded that the number was blocked and would remain blocked because McLaughlin had used another inmate's PIN to call the phone number. McLaughlin filed a second RFI, reiterating his request that his mother's telephone number be "unblock[ed]" and again alleging that there was no rule prohibiting the use of another inmate's PIN. The RFI was referred for investigation.

The investigator found that McLaughlin had used three different prisoners' PINs to call his mother 11 times. After McLaughlin's mother's number was blocked, there were four attempts to call that number from PIN numbers other than McLaughlin's. Finding that the "evidence clearly establishe[d] that McLaughlin knowingly and willingly refused to obey a direct order of a staff member on a minimum of 11 times," the investigator cited McLaughlin.[7]

---

[6] A Request For Interview is the written form prisoners use to communicate with prison staff. STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES, INSTITUTIONS, PRISONER'S RIGHTS, PRIVILEGES AND ACTIVITIES, COMMUNICATION BETWEEN PRISONERS 808.11 (2018), https://doc.alaska.gov/pnp/pdf/808.11.pdf.

[7] The investigator cited McLaughlin under 22 AAC 05.400(c)(19), which lists "refusing to obey a direct order of a staff member" as a "[h]igh-moderate infraction."

**B.    Proceedings**

**1.    DOC disciplinary proceedings**

In March DOC gave McLaughlin notice of a disciplinary hearing related to the infraction.  In advance of the hearing, McLaughlin requested that the involved prison superintendent and investigator appear as witnesses.  McLaughlin's hearing advisor asked him to submit a list of written questions for his witnesses and noted that additional clarifications could be addressed at the hearing.  McLaughlin apparently did not submit written questions as requested; instead, he filed an RFI claiming that being asked to submit questions denied him his "right to call and meaningfully question the witnesses requested."  The prison superintendent did not testify, and McLaughlin did not object to her absence during the hearing.

McLaughlin also requested the original copy of his December 2017 grievance.  He claimed his original copy was lost during a "shakedown" of his cell in January.  McLaughlin had made several requests for this document before the disciplinary proceedings were initiated, and he continued to request the document throughout the disciplinary proceedings.  He argued that the original copy of the grievance would demonstrate that he had prevailed and that the PIN-use policy at issue was therefore invalid.  DOC provided McLaughlin with a copy of the grievance from DOC's records, not the original version.

McLaughlin's disciplinary hearing went forward in April.  During the hearing McLaughlin pled not guilty, but also admitted to using other people's PINs to call his mother.  In his defense, he argued that the January memorandum about telephone PIN sharing was invalid because it contradicted DOC policy and was improperly issued, and that the policy only applied if he had misused his own PIN number, which he had not.  The only other witness was the investigating sergeant whose testimony McLaughlin had requested.  The investigator testified that he believed the memorandum was valid because it was written by the facility standards sergeant and

that, through his investigation, he found McLaughlin had used other people's PIN numbers to call his mother.

McLaughlin was found guilty of violating a direct order of a prison official for using other inmates' PINs to make telephone calls to his mother. McLaughlin appealed to the prison superintendent, reiterating that the memorandum was not valid. The superintendent denied his appeal, noting that McLaughlin was "told not to use other inmates['] PIN numbers more than once . . . [and] chose to do to it anyways."

### 2. McLaughlin's appeal

McLaughlin appealed the disciplinary decision to the superior court. After extensive motion practice, McLaughlin eventually obtained the original grievance and amended the record accordingly. McLaughlin raised a due process challenge, arguing he could not be disciplined for conduct that was only prohibited by an "unofficial" and "unauthorized" policy. He also contended that the disciplinary hearing process denied him due process in several ways.

The superior court affirmed the DOC disciplinary decision. The court first found that the memorandum clarifying the telephone-use policy was valid and within the broad authority of DOC to ensure telephone access. The court determined that the memorandum was a regulation, and that DOC had failed to meet all of the technical requirements of DOC policy in issuing the memorandum. But the court determined DOC's technical errors were harmless because the memorandum was a reasonable clarification of an existing policy and sufficiently clear to provide adequate notice of prohibited conduct. The court further found that McLaughlin was given notice of the prohibited conduct on multiple occasions and, each time, DOC staff stated that phone PINs were not to be traded, sold, bartered, or in any way shared among prisoners.

The court also rejected McLaughlin's argument that the disciplinary hearing process denied him due process. The court was not persuaded by McLaughlin's arguments that the hearing officer and reviewing superintendent were privy to information requiring their recusal, noting that the hearing officer and superintendent

were only aware of events that were "common knowledge" in the facility. And the court determined that DOC adequately provided McLaughlin with an opportunity to present witnesses and that the absence of an original grievance form in no way prejudiced McLaughlin's ability to present a defense. Overall, the court decided that McLaughlin's fundamental constitutional rights had not been violated and that his right to a fair adjudication was not prejudiced.

McLaughlin appeals.

## III. STANDARD OF REVIEW

"We will reverse a DOC disciplinary decision only if we 'find[ ] that the prisoner's fundamental constitutional rights were violated . . . and that the violation prejudiced the prisoner's right to a fair adjudication.' "[8] "Whether an inmate has received procedural due process is an issue of constitutional law" that we review using our independent judgment.[9] Whether a prisoner "has suffered prejudice is likewise reviewed de novo."[10] Additionally, a disciplinary decision cannot be reversed "because the department failed to follow hearing requirements set out in state statutes and regulations," unless that failure resulted in prejudice to the prisoner due to the denial of a constitutional right.[11]

## IV. DISCUSSION

### A. The Memorandum On Telephone PIN Sharing Was A Valid Order.

McLaughlin's argument on appeal centers on his contention that DOC's memorandum clarifying its telephone PIN policy was an "invalid" "usurpation" of the DOC Commissioner's authority to promulgate regulations for the management of the

---

[8] *Nordlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1181 (Alaska 2022) (alteration in original) (quoting AS 33.30.295(b)(1)).

[9] *Id.*

[10] *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018).

[11] AS 33.30.295(b)(2).

prison.[12] Because we give no deference to the decision of a superior court acting as an appellate court in an administrative matter, we consider de novo whether the memorandum was a lawful exercise of the superintendent's authority.[13]

Under the applicable statute and regulation, prisoners are to have "reasonable access to a telephone,"[14] but the superintendent "may limit a prisoner's access to a telephone, except to call an attorney, if reasonable grounds exist to believe that the prisoner's use of a telephone threatens the security of the facility or the protection of the public."[15] DOC policy further provides that "[p]risoners in open population . . . shall have reasonable telephone access *as determined by the Superintendent.*"[16] Additionally, the superintendent may limit or suspend prisoner telephone access if "reasonable grounds" exist indicating that a "prisoner's telephone use threatens facility security, . . . or otherwise constitutes telephone abuse."[17] In addition to this fairly broad discretionary authority, prisoners are specifically prohibited from using "Personal Identification Numbers (PINs) not issued directly by the facility."[18]

Issuing a memorandum to Wildwood Correctional Facility inmates ordering that their PINs are confidential, private, and not to be shared or traded was well within the superintendent's discretion based on these policies. It is clearly a "commonsense interpretation" of the existing policy that prisoners are only to use PINs

---

[12] In fact before DOC issued the memorandum McLaughlin asked that DOC clarify the PIN policy in the prisoner handbook.

[13] *See Nordlund*, 520 P.3d at 1181.

[14] AS 33.30.231(a).

[15] 22 AAC 05.530(c).

[16] DOC POLICY 810.01.VII.A.1 (2007), *supra* note 3 (emphasis added).

[17] *Id.* VII.A.1(b).

[18] *Id.* VII.A.2(a)(6).

*issued directly* to them by the facility.[19] As DOC notes, prisoners using PINs they were not assigned could subvert efforts to monitor prison calls and ensure facility safety. Such a practice could also permit prisoners whose telephone access has been limited due to security concerns to subvert that limitation. In addition to addressing legitimate security concerns, the order still provides reasonable access to telephone use; so long as a prisoner uses his own PIN, he can continue to access the telephones. Issuance of the memorandum regarding PIN use was a reasonable exercise of the superintendent's discretion and authority to ensure both prisoner telephone access and prison security. We therefore conclude that the memorandum was a valid directive within the superintendent's discretion.[20]

### B. DOC Provided Adequate Notice Of The Prohibited Conduct.

McLaughlin further frames his challenge to the validity of the order as a "failure to provide notice of [the] forbidden conduct" resulting in the violation of his right to due process. He argues first that the order is "void for vagueness" because it does not specifically say that a prisoner cannot use another prisoner's PIN, but rather provides that a prisoner cannot share his own PIN. The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[21]

---

[19]    *Cf. Chevron U.S.A., Inc. v. State, Dep't of Revenue*, 387 P.3d 25, 35-36 (Alaska 2016) (holding that "commonsense interpretation" of existing regulation does not require new regulation).

[20]    Because we hold the order was valid, we need not address the State's argument that McLaughlin was obligated to follow the order regardless of its validity under *Larson v. Cooper*, 113 P.3d 1196, 1202-03, 1202 n.39 (2005).

[21]    *Treacy v. Mun. of Anchorage*, 91 P.3d 252, 260-61 (Alaska 2004) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

Contrary to McLaughlin's argument, we conclude the memorandum is not vague. Rather, it states that a PIN is "private" and "confidential" and that it is not to be shared in any way. It specifically instructs inmates not to "sell, trade, barter, give or in any way use their [PIN] number other than for themselves." Read naturally, this includes a prohibition on McLaughlin's use of another inmate's PIN, even if he did not share his own. Moreover, the language of the memorandum does not encourage arbitrary or discriminatory enforcement; it is clearly broad and encompasses any behavior that would result in an inmate using another inmate's PIN.[22]

Beyond vagueness, McLaughlin argues he did not have notice because the facility staff adopted a "play it by ear" approach to enforcement. But the record clearly shows that after December 2017 McLaughlin was told on at least three occasions that he was not allowed to use other inmates' PINs. First, when McLaughlin asked about why his telephone PIN was blocked, he was told he was not allowed to "trade" or share his PIN. DOC then issued a memorandum explicitly ordering all inmates not to share PINs. Finally, when McLaughlin appealed the denial of his grievance, the superintendent again stated that PINs "are not to be traded." Given these multiple advisements, an ordinary person would have been on notice not to use another prisoner's PIN. DOC's interpretation and enforcement of the prohibited conduct was consistent. In all, McLaughlin was provided sufficient notice of the prohibited conduct at issue, and his constitutional due process rights were not violated.

---

[22] McLaughlin also points to the fact that the prison was simultaneously using two different types of "PINs" at the time of the memo, therefore undermining the memo's ability to provide notice of what conduct was prohibited. At the time of the infraction, however, the prison was primarily using biometric PINs, so an ordinary person would understand which type of PIN was referenced in the orders.

**C. DOC's Disciplinary Hearing Process Did Not Violate McLaughlin's Constitutional Rights.**

McLaughlin raises several additional claims relating to his constitutional rights. He claims that DOC failed to give him the original copy of his grievance report, and that this failure constituted exclusion of key evidence; that the failure of a particular prison superintendent to appear as a witness prejudiced his rights to confront witnesses; that the hearing officer and reviewing superintendent should have recused themselves from presiding over his tribunal and appeal; and that the disciplinary proceeding amounted unlawful retaliation against him.[23] Our review of the record reveals no prejudicial error. We therefore affirm the disciplinary decision.

**1. DOC did not prejudice McLaughlin by providing a copy of the grievance report instead of the original.**

McLaughlin argues that the exclusion of the original copy of the grievance report from the disciplinary hearing prejudiced him because it denied him his right to present evidence in his defense.[24] McLaughlin points to the summary version of the grievance and the handwritten original resolution of the grievance, arguing the original is exculpatory. But these two documents say exactly the same thing: "Phone pins are not to be traded." The handwritten copy acknowledged McLaughlin's request that the

---

[23] McLaughlin also lists among his issues on appeal that the disciplinary proceeding violated constitutional prohibitions on double jeopardy and ex post facto laws. But he did not otherwise brief those issues. We therefore consider these arguments forfeited. *See Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) (" '[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.' This is true for pro se litigants as well as represented litigants." (quoting *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015))).

[24] *See Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1234 (Alaska 2003) ("Subject to certain limitations, inmates accused of major disciplinary infractions are entitled to a disciplinary hearing marked by the right to call witnesses and produce documentary evidence, the right to confront and cross-examine witnesses, . . . and a fair and impartial hearing which may be conducted by employees of the prison system." (citing *McGinnis v. Stevens*, 543 P.2d 1221, 1236-37 (Alaska 1975))).

rule be clarified prison-wide, but both versions are quite clear that sharing PINs is not permitted. Contrary to McLaughlin's argument, the original, handwritten version of the grievance order does not show that he prevailed or was told that he could use other people's PINs.

Regardless of whether DOC's failure to provide McLaughlin with the requested version of the grievance form constituted error, the requested document would not have changed the outcome of the disciplinary hearing. Any error is therefore harmless.[25]

### 2. DOC did not err when it did not call the requested superintendent to the hearing.

McLaughlin argues that his due process rights were violated by DOC's failure to call as a witness the superintendent who denied his initial grievance appeal and who issued the memorandum order regarding PIN use. Inmates generally have due process rights to call and present witnesses during disciplinary proceedings.[26] Per DOC policy, inmates facing a disciplinary hearing are entitled to "have a reasonable opportunity to interview witnesses, . . . if that action would not create a risk of reprisal or undermine security."[27] And an inmate "may use a Hearing Advisor to assist in the collection of evidence if . . . the witness to be interviewed is a staff member."[28]

---

[25] *Cf. Walker v. State, Dep't of Corr.*, 421 P.3d 74, 82 (Alaska 2018) (holding hearing officer's failure to call witnesses with testimony that could have resolved factual dispute was prejudicial to outcome).

[26] *Id. see also James v. State, Dep't of Corr.*, 260 P.3d 1046, 1052-53 (Alaska 2011) (describing importance of inmate's rights to call witnesses and DOC's duty to provide access to accuser), *overruled on other grounds by Walker*, 421 P.3d at 78-82.

[27] STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES, INSTITUTIONS, PRISONER RULES, DISCIPLINE, AND APPEALS, DISCIPLINARY COMMITTEE HEARING OFFICERS AND BASIC OPERATION 809.04.II.F.3 (2017), https://doc.alaska.gov/pnp/pdf/809.04.pdf.

[28] *Id.*

Here, McLaughlin did request that this particular prison superintendent appear as a witness. But he never submitted written questions for the superintendent, despite multiple requests by his hearing advisor that he do so. And he never brought up or complained about the absence of the superintendent during the hearing process itself. Moreover, given that this superintendent did not herself investigate McLaughlin's telephone or PIN use or write the disciplinary report, she was not a mandatory witness.[29] Under these circumstances, the absence of the requested superintendent at the hearing did not violate McLaughlin's due process rights.

### 3. McLaughlin's right to an impartial decision-maker was not violated.

McLaughlin argues that because the prison officials overseeing his disciplinary hearing and reviewing the disciplinary decision were involved in issuing the memorandum order regarding PIN use, neither official was able to serve as an impartial arbiter. Due process in prison disciplinary proceedings requires that the hearing be held before an impartial decision-maker.[30] To ensure that prisoners receive an impartial tribunal, DOC regulations disqualify persons from serving as a hearing officer in several specific instances that indicate a substantial involvement in the underlying disciplinary issue. Those instances include where the person wrote the disciplinary report, investigated the alleged violation, witnessed the events, or otherwise has specific knowledge of the underlying facts.[31] The regulations also

---

[29] *See* 22 AAC 05.435(a) ("If the accused prisoner . . . requests the disciplinary tribunal to call as a witness the member of the facility staff who wrote the disciplinary report, the staff member shall appear as a witness."); *James*, 260 P.3d at 1053-55 (deciding officers who wrote disciplinary report and investigated incident were mandatory witnesses).

[30] *McGinnis v. Stevens*, 543 P.2d 1221, 1228 (Alaska 1975).

[31] 22 AAC 05.450(b)(1), (2), (3), (5).

contain a catchall provision for additional circumstances that may show bias.[32] These recusal requirements apply to the superintendent when reviewing an appeal of a disciplinary decision.[33] A prisoner must make a "factual showing of a pattern of bias" to show that any failure to follow this policy violated his constitutional rights, in order to overcome a presumption of impartiality among prison staff.[34]

Here, neither the hearing officer nor the superintendent reviewing the disciplinary decision on appeal were required to recuse themselves. Neither official wrote the original disciplinary report, investigated the incident, witnessed alleged violations, or had special knowledge requiring recusal. To the extent the superintendent was aware of previous conduct by McLaughlin, it related exclusively to processing his previous grievances, not to conduct at issue in this disciplinary matter.[35]

McLaughlin's primary argument seems to be that because both the hearing officer and the reviewing superintendent had been involved in the issuance of the memorandum order about PIN use, they were partial to that order and therefore biased. But without any real evidence of bias, McLaughlin has not overcome the presumption that a prison official can serve as part of "a neutral and detached tribunal which is capable of following fair procedures and rendering fair decisions."[36] We also note that if a prison superintendent was required to recuse himself or herself from an appeal due to involvement in creating or issuing the contested rule or regulation, the superintendent would be recused from many appeals, given that official's role in creating internal

---

[32] *Id.* 05.450(b)(6).

[33] *Id.* 05.480(e). The person serving as the hearing officer on a disciplinary matter cannot also be appointed to review the disciplinary decision on appeal. *Id.* 05.450(b)(4).

[34] *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1234 (Alaska 2003).

[35] *See* 22 AAC 05.450(b)(3).

[36] *Brandon*, 73 P.3d at 1234-35.

prison policies.**37** DOC regulations do not support such a sweeping recusal requirement.**38**

Given that DOC regulations did not require the recusal of either the hearing officer or the reviewing superintendent in this matter, and given McLaughlin's failure to present evidence of actual bias, we conclude that his due process right to an impartial tribunal was not violated.

### 4. DOC officials did not engage in retaliatory conduct.

McLaughlin also argues the disciplinary charges were a retaliatory response to his grievance complaints. To make out a claim of retaliatory conduct impinging First Amendment rights in the prison context, a claimant must prove five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."**39**

The record does not support a claim for retaliatory conduct. McLaughlin provides no proof of retaliation, other than the timing of the disciplinary charges in

---

**37** *See, e.g.*, 22 AAC 05.550(c) ("Religious activities may be proscribed or limited if the superintendent determines that restriction of the activity is justified in light of . . . maintaining security and discipline."); *id.* 05.165(a) ("Each facility must develop and maintain programs of recreation and exercise compatible with security of the facility and the custody levels of prisoners."); *id.* 05.510(a) ("A prisoner . . . . may have access to the resources of the state library system through inter-library loan procedures established by the superintendent.").

**38** *See* 22 AAC 05.480(e) ("Disciplinary action for a minor, low-moderate, or high-moderate infraction may only be appealed to the superintendent.").

**39** *DeRemer v. Turnbull*, 453 P.3d 193, 197 (Alaska 2019) (alteration in original) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

relation to his grievance.[40] This timing in itself, however, does not demonstrate that the adverse action — the disciplinary charges — resulted from McLaughlin's exercise of his grievance rights as opposed to his violation of the memorandum order at issue. Nor does the timing in itself undermine the legitimate penological purpose for the discipline: to ensure that McLaughlin followed the rules about not sharing PINs.[41]

With the failure of each of McLaughlin's arguments, we observe no due process or other constitutional violation in the disciplinary proceedings at issue.

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

[40] *Cf. id.* (noting inmate's specific allegations that disciplinary hearing official's finding of guilt was retaliation for inmate's constitutionally protected exercise of procedural rights).

[41] *See id.* (requiring First Amendment retaliation claim to include evidence that "the action did not reasonably advance a legitimate correctional goal").