*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MATE VALOAGA, | ) | |
| | ) | Supreme Court No. S-18814 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-22-01593 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | No. 7737 – January 17, 2025 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Mate Valoaga, pro se, Wasilla, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

I.      INTRODUCTION

A man held in pretrial detention challenges the decision of the Department of Corrections (DOC) to impose discipline for his failure to provide a urine sample within the time period required by prison policy. He argues that the decision violated the Alaska Constitution in two ways.

First, he argues that DOC may not impose discipline for a violation of prison rules unless the violation is proved by clear and convincing evidence, which was not the burden of proof applied here. We disagree and conclude that the Alaska Constitution permits the use of a preponderance of the evidence standard in prison disciplinary proceedings. The inmate's interest in being free from harsher conditions of confinement and loss of privileges is important. So is DOC's interest in imposing consequences for rule infractions in the challenging prison environment. Because there are important interests on both sides, we conclude that it is permissible to allocate the risk of error equally with the preponderance standard.

Second, the inmate argues that DOC's failure to offer him a saliva test in lieu of a urine test when he was unable to urinate within the required time violated his due process rights. Because he did not raise this argument until his reply brief in superior court, it is not preserved for our review. We therefore decline to address it.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Mate Valoaga is a pretrial inmate at Goose Creek Correctional Center. In April 2022 a DOC staff member asked him to provide a urine sample for random drug testing. Under DOC policy an inmate has two hours to provide a urine sample once requested.[1] Failure to provide a sample within two hours is considered refusal to provide a sample.[2] Refusal constitutes a violation,[3] which results in discipline.[4] Valoaga attempted to provide a sample, but after 30 minutes he told the staff member

---

[1]     DEP'T OF CORR., POLICIES & PROCEDURES 808.14: SUBSTANCE ABUSE TESTING (2013), https://doc.alaska.gov/pnp/pdf/808.14.pdf.

[2]     *Id.*

[3]     *Id.*

[4]     22 Alaska Administrative Code (AAC) 05.400(c)(16) (describing "refusal to provide a urine specimen when requested" as "high-moderate" infraction).

that he was having difficulty urinating. Valoaga received the opportunity to drink water and then waited for an hour. Then he tried again for 15 minutes more, but failed to urinate. The staff member informed Valoaga that he would receive an infraction for refusing to provide a urine sample and then filed an incident report.[5]

## B. Proceedings

Later that month Valoaga pled not guilty in a disciplinary hearing before a prison tribunal. He asserted that he had tried to urinate when he was asked, but could not. He claimed that he did not understand the two-hour policy at the time of his test. He did not object when asked if he had been given two hours to produce a urine specimen. But he claimed that his result would have been negative.

The prison disciplinary tribunal found Valoaga guilty of refusing to provide a urine specimen, a "high-moderate" infraction.[6] The tribunal applied the preponderance of the evidence standard, the burden of proof used in prisoner disciplinary hearings under DOC regulations.[7] As a penalty, Valoaga received time in punitive segregation.

He appealed the decision to the facility's superintendent. He filed a written document asserting several arguments. He also attached a letter as an exhibit to his appeal form. Among other things, the letter alleged that Valoaga never refused to offer a urine sample and had offered to remain longer to try and urinate, that he had immediately written to medical staff to see if there was another way to comply with the testing policy, and in general terms that DOC's drug testing policy violated his due

---

[5] This report is not entirely clear regarding how much time Valoaga was allowed to try and produce a sample. The report does not indicate when Valoaga was ordered to provide a sample; one hour and 45 minutes elapsed between when he said he was willing to provide a sample and the time the officer imposed the infraction. But Valoaga does not argue that he was denied his full two hours under DOC's procedures.

[6] 22 AAC 05.400(c)(16).

[7] 22 AAC 05.455(a).

process rights. Valoaga also challenged his signed acknowledgment of the refusal to provide a specimen. Noting that English is his second language, Valoaga argued that he was confused about the proceedings. The superintendent denied the appeal.

Valoaga appealed to the superior court. His opening brief raised only one issue: that the preponderance of the evidence standard used in the prison disciplinary proceeding violated his due process rights. He argued that our decision in *McGinnis v. Stevens*[8] held that the Alaska Constitution required DOC to use a clear and convincing standard in disciplinary proceedings. Valoaga contended that this error prejudiced him. He asserted that "prejudice is presumed" when the government "uses an unconstitutional standard of proof to deprive [its] citizens of a Liberty interest."

DOC filed an opposition brief. It disputed Valoaga's assertion that *McGinnis* established a constitutionally required burden of proof for prison disciplinary hearings. It argued that our decision in *Nordlund v. State, Department of Corrections*[9] ratified the "some evidence" standard as constitutionally permissible. Therefore, DOC reasoned, it was also constitutionally permissible to use the preponderance standard in prison disciplinary proceedings.

Valoaga added new arguments in his reply brief. He asserted for the first time that "the institution's failure to administer the saliva test violated his procedural due process rights." He asserted that the record showed that he "would have done anything to comply" but that he was "physically unable" to produce a sample in two hours.

The superior court issued an opinion affirming the administrative decision. The court was unpersuaded by Valoaga's reliance on *McGinnis* and

---

[8]     543 P.2d 1221 (Alaska 1975).

[9]     520 P.3d 1178 (Alaska 2022) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 456 (1985)).

concluded that the preponderance standard is constitutional in light of our decision in *Nordlund*.

The court also addressed whether DOC's drug testing procedures complied with due process. It observed that Valoaga did not raise this argument in his opening brief. Although the issue was "almost certainly waived," the court addressed the merits anyway. It commented that "[t]wo hours is perhaps too short a time, as the court can imagine an inmate genuinely unable to urinate within two hours." But it ultimately determined that "some limits are needed for corrections officers to complete their duties according to DOC's schedule, rather than the inmate's" and that "[a]bsent a major issue, it is not the court's place to second-guess DOC reasoning on these points." Therefore it upheld DOC's policy.

Valoaga appeals.

## III. STANDARD OF REVIEW

"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision."[10] A court may reverse a DOC disciplinary decision only if it "finds that the prisoner's fundamental constitutional rights were violated in the course of the disciplinary process" and that "the violation prejudiced the prisoner's right to a fair adjudication."[11] "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[12] "Whether a party has suffered prejudice is likewise

---

[10] *Griswold v. Homer Bd. of Adjustment*, 440 P.3d 248, 252 (Alaska 2019) (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72-73 (Alaska 2013)).

[11] AS 33.30.295(b)(1).

[12] *Nordlund*, 520 P.3d at 1181 (quoting *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003)).

reviewed de novo."[13] "The question of what standard of proof applies to a given issue" is a question of law.[14]

## IV. DISCUSSION

### A. Requiring Prison Officials To Prove Alleged Disciplinary Violations By A Preponderance Of The Evidence Does Not Violate The Right To Due Process.

Valoaga argues that DOC used an unconstitutional burden of proof in his disciplinary hearing. He maintains that when a major infraction of prison rules is alleged, the due process clause of the Alaska Constitution[15] requires that DOC hearing officers find the prisoner's guilt by clear and convincing evidence before imposing sanctions. We first analyze whether our decisions directly control this issue. Because we conclude that they do not, we apply the *Mathews v. Eldridge*[16] balancing test to determine whether a clear and convincing evidence standard is constitutionally required.

#### 1. Our prior decisions did not determine whether a preponderance of the evidence standard is constitutionally permissible in prison disciplinary proceedings.

The parties rely on competing precedents to support their positions. Valoaga argues that our decision in *McGinnis* establishes that a clear and convincing evidence standard is required. DOC argues that our decision in *Nordlund* held that it is not. We conclude that neither decision directly controls.

---

[13]  *Id.* (quoting *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018)).

[14]  *DeNuptiis v. Unocal Corp*, 63 P.3d 272, 277, 279 (Alaska 2003) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (Alaska 1976) as guide to determine "whether a standard of proof is appropriate").

[15]  Alaska Const. art. 1, § 7.

[16]  424 U.S. at 334-35.

In *McGinnis* we established certain minimum due process protections for prison disciplinary proceedings under the Alaska Constitution. The inmates in that case argued that when a major infraction is alleged, due process requires proof of guilt beyond a reasonable doubt.[17] We disagreed:

> Since we are of the view that disciplinary proceedings are not criminal proceedings within the intendment of Alaska's constitution, we are not convinced that a reasonable doubt standard of proof is mandated. Thus, we hold that the Division's adoption and use of the guilt determination criterion of 'substantially more probable than . . . innocence' is not violative of Alaska's constitution and affords adequate protection to the inmate in disciplinary proceedings.[18]

Contrary to Valoaga's assertion, the *McGinnis* decision did not set the "substantially more probable" standard as the constitutional floor. We stated in *Brandon v. State, Department of Corrections* that the *McGinnis* decision established a panoply of due process rights in prison disciplinary proceedings, including a standard of guilt "substantially more probable than . . . innocence."[19] But that was a mistake. A close reading of *McGinnis* shows that this standard was set by a DOC regulation in effect at the time, which we upheld against constitutional challenge.[20] We did not hold in *McGinnis* that such a standard was *required* by the constitution.[21] Rather, we merely rejected the argument that the constitution required proof beyond a reasonable doubt in prison disciplinary proceedings.[22]

---

[17] *McGinnis v. Stevens*, 543 P.2d 1221, 1229 (Alaska 1975).

[18] *Id.*

[19] 73 P.3d 1230, 1234 (Alaska 2003) (citing *McGinnis*, 543 P.2d at 1229).

[20] *McGinnis*, 543 P.2d at 1229.

[21] *See id.*

[22] *Id.*

The *Nordlund* decision did not determine the constitutionality of the preponderance standard in prison disciplinary proceedings either. In *Nordlund* we upheld the constitutionality of a statute limiting judicial review of prison disciplinary decisions.[23] According to AS 33.30.295(b)(3), "[a] disciplinary decision may not be reversed . . . because of insufficient evidence if the record . . . shows that the disciplinary decision was based on some evidence that could support the decision reached." We held that this standard of review did not violate the due process clause of the Alaska Constitution.[24] But as Valoaga correctly points out, we upheld a standard of appellate review, not a burden of proof for the initial decisionmaker.

Yet it does not follow, as Valoaga suggests, that *Nordlund* has no bearing on the issue presented in this case. Many of the same policy considerations that supported our decision in *Nordlund* apply with equal force here, as we explain below.

> **2.      Applying the *Mathews v. Eldridge* test, we conclude that due process does not require prison disciplinary decisions to be based on clear and convincing evidence.**

We use the *Mathews v. Eldridge* test to weigh competing considerations when deciding precisely what process is due before the State may deprive a person of a protected liberty or property interest.[25] Under this test we consider:

> the private interests affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the fiscal and

---

[23]     *Nordlund v. State, Department of Corrections*, 520 P.3d 1178, 1183-84 (Alaska 2022).

[24]     *Id.* at 1184.

[25]     *DeNuptiis v. Unocal Corp.*, 63 P.3d 272, 279 (Alaska 2003); *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Whether any procedural protections are due depends on . . . whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment.").

administrative burdens that additional or substitute procedural requirements would entail.[26]

Weighing these factors, we conclude that the Alaska Constitution does not require prison disciplinary decisions to be made by clear and convincing evidence.

First, we consider the private interest at stake. Valoaga has a liberty interest in not being wrongly punished with conditions of confinement more severe than he already endures.[27] Incarcerated people are not entitled to the "full panoply of rights due to an accused in a criminal proceeding."[28] But the importance of their interest against undeserved punishment has led us to recognize that they have a qualified right to call and cross-examine witnesses, to produce documentary evidence, and to have a fair and impartial hearing.[29]

Second, we consider the risk of erroneous deprivation that comes with using a preponderance of the evidence standard for prison disciplinary decisions. Obviously, using a more demanding burden of proof would lessen the risk that inmates are mistakenly punished for infractions they did not commit. At the same time, a more

---

[26] *Id.* (quoting *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988)).

[27] *See Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1234 (Alaska 2003).

[28] *McGinnis v. Stevens*, 543 P.2d 1221, 1226 (Alaska 1975).

[29] *Brandon*, 73 P.3d at 1234 (citing *McGinnis*, 543 P.2d at 1236-37). Valoaga's brief purports to incorporate his briefing to the superior court, which suggested that because he is a pretrial detainee, his liberty interest is greater than that of a prisoner who has been convicted. But we do not allow litigants to incorporate arguments from other documents into their briefs, so this argument is waived. *McCormick v. Chippewa, Inc.*, 459 P.3d 1172, 1180 (Alaska 2020) (holding arguments waived for inadequate briefing when appellant attempted to incorporate by reference arguments made in other documents).

demanding burden would also increase the risk that violations of prison disciplinary rules may go unpunished.[30]

Third, we consider the State's interest in using a preponderance standard for prison disciplinary proceedings. When we upheld the use of the "some evidence" standard of review in *Nordlund*, we relied on the reasoning of the U.S. Supreme Court:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.[31]

In reaching this conclusion, we recognized "the importance of giving prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "[32] These interests are no less at stake in this dispute.

Balancing these interests, we conclude that the due process clause of the Alaska Constitution permits the use of a preponderance of the evidence standard in prison disciplinary proceedings. Placing the risk of mistake equally on prison administrators and the inmate properly balances their important competing interests: the prisoner's interest in avoiding harsher conditions of confinement against the

---

[30] *See Superintendant, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (explaining that lower of burden of proof can achieve goal of "prevent[ing] arbitrary deprivation without threatening institutional interests or imposing undue administrative burdens").

[31] *Norlund v. State, Dep't of Corr.*, 520 P.3d 1178, 1184 (Alaska 2022) (quoting *Hill*, 472 U.S. at 456).

[32] *Id.* at 1184 n.30 (quoting *State v. Avery*, 211 P.3d 1154, 1157 (Alaska App. 2009)).

prison's interest in enforcing rules necessary for order in a challenging environment.[33] Therefore, the superior court did not err in affirming DOC's use of a preponderance of the evidence standard in Valoaga's disciplinary proceedings.

**B.      Valoaga Failed To Preserve His Argument That DOC's Drug Testing Policy Violated His Due Process Rights.**

Valoaga argues that DOC's drug testing policy violated his substantive due process rights.[34]  Specifically, Valoaga argues that he physically could not urinate, and that considering his inability to urinate as a "refusal" without first offering him a saliva test violated due process.

We decline to address this argument on the merits because it was not properly preserved for our review.  Valoaga did not make this argument until his reply brief to the superior court.  Because he did not timely raise the issue, DOC had no ability to rebut his assertions or to present evidence justifying its actions or omissions related to saliva tests.

---

[33]      *Cf. Disciplinary Matter Involving Walton*, 676 P.2d 1078, 1085 (Alaska 1983) (holding Constitution permitted preponderance of the evidence standard in lawyer disciplinary proceedings; "[b]ecause there are substantial interest[s] on both sides" — lawyer's interest in reputation and livelihood versus public's interest in protection against unethical lawyers — "the risk of error should be borne equally").

[34]      Valoaga argues that the policy violated both his procedural and substantive due process rights.  But his theory touches only on substantive, not procedural, due process.  "Substantive due process 'focuses on the result of governmental action, not its procedures, meaning that it imposes limits on what a state may do regardless of what procedural protection is provided.' " *Native Vill. of Kwinhagak v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 542 P.3d 1099, 1117 (Alaska 2024) (quoting *In re Hospitalization of Mabel B.*, 485 P.3d 1018, 1024 (Alaska 2021)).  Valoaga argues that the constitution does not allow punishment without first offering a saliva test.  In effect he argues that the policy gives an unconstitutional definition of "refusal," the threshold element before discipline is imposed.  DEP'T OF CORR., POLICIES & PROCEDURES 808.14, *supra* note 1; 22 AAC 05.400(c)(16); 22 AAC 05.470.  But this theory takes issue with the definition of the offense, not the procedures DOC must follow before imposing punishment.  So the argument is better characterized as a substantive due process challenge.

We first consider issue exhaustion. " 'Issue exhaustion' refers to the requirement that individual issues must be raised in an administrative appeal in order to raise those issues in a subsequent judicial proceeding . . . ."[35] "As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved."[36] But this requirement does not apply in all contexts. "[O]ur cases mandating issue exhaustion in several types of agency proceedings should not be construed to 'announce an inflexible practice' of mandating issue exhaustion in *all* such proceedings."[37] And in some cases we have held that inmates' failure to exhaust particular issues in prison disciplinary proceedings does not preclude judicial review.

In *Walker v. State, Department of Corrections*, we concluded that inmates who fail to raise constitutional claims during their disciplinary proceedings "do not necessarily forfeit those claims" on appeal.[38] In that case an inmate sought the presence of several witnesses at his disciplinary hearing, but the hearing officer denied his request without explanation.[39] The inmate did not challenge this decision during his administrative proceedings, but he argued on appeal to the superior court that denying him the opportunity to call witnesses violated his right to due process.[40] The superior court held the argument was not preserved, but on appeal we reversed.[41] We concluded

---

[35] *Walker v. State, Department of Corrections*, 421 P.3d 74, 79 n.17 (Alaska 2018) (citing *Etchu-Njang v. Gonzales*, 403 F.3d 577, 581 (8th Cir. 2005)).

[36] *Id.* at 78 (quoting *1000 Friends of Md. v. Browner*, 265 F.3d 216, 227 (4th Cir. 2001)).

[37] *Id.* at 78-79 (emphasis in original) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)).

[38] *Id.* at 81.

[39] *Id.* at 77.

[40] *Id.* at 77-78.

[41] *Id.* at 79-81.

that applying the rule of issue exhaustion was not appropriate under the circumstances.[42]  We observed that no statute or regulation required issue exhaustion in prisoner disciplinary proceedings.[43]  And we held that prison administrators do not have special expertise to address constitutional claims, so allowing judicial review despite failure to exhaust would not impermissibly displace agency skill or discretion.[44]  Therefore we considered the prisoner's due process challenge on its merits.[45]  However, we left open the possibility that the exhaustion requirement might apply "to issues that a prisoner never brings to DOC's attention or that a prisoner deliberately ignores."[46]  And we took special note of the fact "that Walker brought his constitutional claim to DOC's attention during the initial stages of the disciplinary process."[47]

In *Huber v. State, Department of Corrections*, an inmate argued for the first time on appeal to the superior court that a hearing officer's written disciplinary decision, which declared the inmate "guilty" without further explanation, violated due process.[48]  Relying on *Walker*, we held that the inmate's failure to exhaust his due process argument did not preclude judicial review.[49]  Unlike in *Walker*, the inmate in *Huber* never brought the asserted violation (the deficiency of the initial disciplinary decision) to prison administrators' attention.[50]  But we reasoned, among other things, that "prison superintendents possess no 'special expertise to address [the] constitutional

---

[42]     *Id.* at 81.

[43]     *Id.* at 79.

[44]     *Id.* at 79-81.

[45]     *See id.* at 81-82.

[46]     *Id.* at 81.

[47]     *Id.*

[48]     426 P.3d 969, 971 (Alaska 2018).

[49]     *Id.* at 972.

[50]     *Id.* at 971.

claim[]' that Huber raises on appeal."[51]  Moreover, no facts beyond those already in the record at the time of the prison administrator's unexplained decision would have been relevant to determining whether that decision afforded a meaningful basis for judicial review.[52]

Valoaga's case is different than *Walker* and *Huber*.  Unlike the inmate in *Walker*, Valoaga never brought the underlying issue of saliva tests to DOC's attention during administrative proceedings.  The record is silent as to whether Valoaga ever asked for or was offered a saliva test.  In his appeal to the superintendent, Valoaga asserted that he "immediately wrote to medical to see if there was another way to make sure of compliance in a situation of this nature," but he did not mention saliva tests or suggest that the failure to offer him one was a violation of his due process rights.[53]

And unlike *Huber*, both prison administrators' expertise and additional facts seem relevant to whether a prison is required to offer, without being asked, a saliva test to an inmate who does not produce a urine sample within the required period of time.  Facts such as the availability, cost, and effectiveness of alternative testing methods might be important to such an inquiry.[54]  Because Valoaga did not raise the

[51]    *Id.* at 972 (quoting *Walker*, 421 P.3d at 80).

[52]    *See id.* at 972-75.

[53]    For support, Valoaga referred to a document attached to his appeal, but we do not find any reference to saliva testing in the administrative record before us.

[54]    *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Ramey v. Hawk*, 730 F. Supp. 1366, 1370-71 (E.D.N.C. 1989) ("In *Turner,* the Court articulated four factors to be considered in evaluating the reasonableness of a prison regulation:  (1) whether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;' (2) 'whether there are alternative means of exercising the rights that remain open to prison inmates;' (3) 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;' and (4) 'the absence of ready alternatives.' (quoting *Turner*, 482 U.S. at 89-90)).  *Ramey* applied the factors

saliva test issue in administrative proceedings, he did not put DOC on notice that it would need to introduce facts relevant to saliva testing into the record.

The failure to exhaust is compounded by the fact that Valoaga did not raise the issue in superior court until his reply brief. Had DOC known that its drug testing policy was being challenged, it might have requested a limited trial de novo[55] to introduce evidence justifying its policy and to aid the court in its constitutional analysis. But DOC was not on notice of the need to do so. Although the superior court addressed the issue despite recognizing it was "almost certainly waived," we decline to decide this constitutional question when DOC did not have notice of the need to produce relevant evidence. Valoaga's challenge to DOC's drug-testing policy is waived.

## V. CONCLUSION

We AFFIRM the decision of the superior court.

---

from *Turner* to uphold a drug testing policy similar to the one challenged in this case. *See Ramey*, 730 F. Supp. at 1368-71.

[55] *See* Alaska R. App. P. 609(b)(1) ("In an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part.").